**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**Case No. 14-CV-316-JHP-FHM**
*Before the Honorable Frank H. McCarthy*

---

**MARTHA DONELSON and JOHN FRIEND on Behalf of Themselves
and on Behalf of All Similarly Situated Persons,
Plaintiffs,**

v

**UNITED STATES OF AMERICA; DEPARTMENT OF INTERIOR; BUREAU OF INDIAN
AFFAIRS; DEVON ENERGY PRODUCTION COMPANY, L.P.; CHAPARRAL
ENERGY, LLC; ENCANA OIL & GAS (USA), INC.; PERFORMANCE ENERGY
RESOURCES, LLC; CEJA CORPORATION; CEP MID-CONTINENT, LLC; LINN
ENERGY HOLDINGS, LLC; SULLIVAN & COMPANY, LLC; CARDINAL RIVER
ENERGY, LP; REVARD OIL & GAS PROPERTIES, INC.; BLACK LAVA
RESOURCES, LLC; B & G OIL COMPANY; ORION EXPLORATION, LLC; NADEL
AND GUSSMAN, LLC; LAMMAMCO DRILLING, LLC; CLEAR MOUNTAIN
PRODUCTION, LLC; SHORT OIL, LLC; WELLCO ENERGY, INC.; RAM ENERGY
RESOURCES, INC.; MARCO OIL COMPANY, LLC; BGI RESOURCES, LLC;
HALCON RESOURCES CORPORATION; THE LINK OIL COMPANY; OSAGE
ENERGY RESOURCES, LLC; TOOMEY OIL COMPANY, INC.; KAISER-FRANCIS
ANADARKO, LLC; HELMER OIL CORP.; SPYGLASS ENERGY GROUP, LLC; and
All Other Lessees and Operators Who Have Obtained a Concession Agreement,
Lease or Drilling Permit Approved by the BIA in Osage County in Violation of
NEPA,
Defendants.**

---

**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT *[DOC. 46]***

---

GUY CLARK – OBA #1698
*Northcutt, Clark, Gardner, Hron & Brune*
P.O. Drawer 1669
Ponca City, OK 74602-1669
Telephone: (580) 762-1655
Facsimile: (580) 765-4142
*Attorneys for Defendants, B & G Oil Company and
Wellco Energy, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF ATTACHMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT . . . . . . . 1

BRIEF IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     STANDARD FOR MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.   STANDARD FOR MOTION TO DISMISS FOR WANT OF
            SUBJECT MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . 3

       B.   STANDARD FOR MOTION TO DISMISS UNDER RULE
            12(b)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.   THE OSAGE MINERAL ESTATE. . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.   PLAINTIFFS' AVERMENTS FAIL TO SUPPORT
            JURISDICTION5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.   ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.   THE COURT DOES NOT HAVE SUBJECT MATTER
            JURISDICTION OF THE ALLEGED CLAIMS OF PLAINTIFFS
            AGAINST THE INDIVIDUAL DEFENDANTS. . . . . . . . . . . . . . . . . 7

            1.   NEPA Is a Procedural Policy Which Applies Only to
                 Federal Agencies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.    There Exists No Underlying APA Final Adjudication to Support an APA "Appeal" Nor Any Discrete Justiciable Event or Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3.    The Doctrine of Mootness Applies to a Challenged NEPA Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B.    THE PLAINTIFFS HAVE NOT, AND CANNOT, JOIN THE OSAGE NATION WHICH, AS THE OWNER OF THE OSAGE MINERAL ESTATE, HAS GRANTED EVERY LEASE CHALLENGED BY THE PLAINTIFFS AND IS AN ESSENTIAL PARTY WHICH CANNOT BE REQUIRED TO WAIVE ITS SOVEREIGN IMMUNITY IN THIS SUIT. . . . . . . . . . . . . . . . . . . . . 10

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

Page

**Statutes:**

118 Stat. 2609 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

34 Stat. §539 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. §4321, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6-9, 15, 16

42 U.S.C. §4332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

5 U.S.C. §554 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 U.S.C. §701, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 8, 15

5 U.S.C. §702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

**Rules:**

FED. R. CIV. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

FED. R. CIV. P. 12(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 16

FED. R. CIV. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FED. R. CIV. P. 19(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

FED. R. CIV. P. 19(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

FED. R. CIV. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Cases:**

*Bayou Liberty Ass'n v U.S. Army Corps*, 217 F.3d 393 (5th Cir. 2000) . . . . . . . 10

*California v Arizona*, 99 S. Ct. 919, 440 U.S. 59, 59 L. Ed. 2d 144 (1979) . . . 4, 12

*Cherokee Nation v State of Oklahoma*, 461 F.2d 674 (10th Cir. 1972)  . . . . . . . 11

*Citizen Potawatomi Nation v Norton*, 248 P.3d 993  . . . . . . . . . . . . . . . . . . 12, 13

*Citizens Comm. to Save Our Canyons v Krueger*, 513 F.3d 1169 (10th Cir. 2008)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cunningham v Univ. of New Mexico Reagents*, 779 F. Supp. 2d 1273 (D.
N.M. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*D.O.T. v Public Citizen,* 124 S. Ct. 2004, 541 U.S. 752, 159 L. Ed. 2d 60 (2004)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Florida Wildlife Fed'n v Goldschmidt*, 611 F.2d 547 (5th Cir. 1980) . . . . . . . . . . 9

*Gonzales v U.S.*, 284 F.3d 281, 288 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 3

*Jech v Dept. Of Interior*, 483 F. App'x 555 (2012)  . . . . . . . . . . . . . . . . . . . . . . 8

*Luterbach Constr. Co. v Adamkus*, 781 F.2d 599 (7th Cir. 1986)  . . . . . . . . . . 10

*Manygoats v Kleppe*, 588 P.2d 556 (10th Cir. 1977)  . . . . . . . . . . . . . . . . . . 13, 14

*New Mexicans for Bill Richardson v Gonzales*, 64 F.3d 1495 (10th Cir. 1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Paper, Allied Indus. Chem. & Energy Workers Union v Continental Carbon
Co.*, 428 F.3d 1285 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Shaw v Udall*, 264 F. Supp. 390 (D.C. Dist. 1967)  . . . . . . . . . . . . . . . . . . . . 4, 12

*Superior Oil Co. v U.S.*, 353 F.2d 34 (9th Cir. 1965)  . . . . . . . . . . . . . . . . . . . . . 11

*The Silverton Snowmobile Club v U.S. Forest Serv.*, 433 F.3d 772 (10th Cir.
2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ward v Humble Oil & Refining Co.*, 321 F.2d 775 (5th Cir. 1963)  . . . . . . . . . 4, 12

*White v Commissioner of Internal Revenue*, 899 F. Supp. 767 (D. Mass. 1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wild Earth Guardians v U.S. Forest Serv.*, 668 F. Supp. 2d 1314 (D. N.M. 2009)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**Treatises & Other Authorities:**

Wright & Miller*, Federal Practice & Procedure: Civil*, §1363 (1990) . . . . . . . . . . 3

## TABLE OF ATTACHMENTS

**Exhibits:**

1      Osage Lease Examples, B & G Oil Company and Osage Tribal Council Resolution Lease

**Unpublished Authorities:**

*Tech v Dept. Of Interior*, 483 F. App'x 555 (2012)

## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT *[DOC. 46]*

**COME NOW** Defendants, B & G Oil Company and Wellco Energy, Inc., ("Individual Defendants"), and respectfully move the Court to dismiss Plaintiffs' First Amended Complaint *[DOC. 46]* as follows:

1.      Pursuant to FED. R. CIV. P. 12(b)(1), lack of subject matter jurisdiction, because:

(a)      the requirements of the National Environmental Policy Act, 42 U.S.C. §4321, *et seq.* (NEPA), alleged by Plaintiffs apply only to federal agencies and not to private parties or non-federal entities, such as the Osage Nation; and

(b)      Plaintiffs identify no "adjudication under the APA" (5 U.S.C. §554) and no actual appeal under the Administrative Procedure Act (5 U.S.C. §701, *et seq.*), to support Plaintiffs' "appeal;" and

(c)      leases, wells and royalties paid to the Osage Nation since 1970 and the investments related to the leases sought by Plaintiffs to be cancelled are long ago completed and any real or imagined NEPA deficiency by the Bureau of Indian Affairs (BIA) is moot.

2.      Pursuant to FED. R. CIV. P. 12(b)(7), failure to join an indispensable party under RULE 19, for the reason that all Osage Nation mineral estate leases to Individual Defendants challenged by Plaintiffs have been entered into with the Osage Tribe of Indians and executed by the Chief of the Osage Nation, who are not parties and, in the absence of the Osage Nation, the Court cannot accord complete relief among existing parties.  The Osage Nation is a sovereign entity and cannot be

required to waive its sovereign immunity, thus requiring dismissal of this action as to the Individual Defendants.

**WHEREFORE,** the Individual Defendants pray for judgment dismissing Plaintiffs' First Amended Complaint and judgment for all costs and reasonable attorney fees against the Plaintiffs.

Respectfully Submitted,

B & G OIL COMPANY
WELLCO ENERGY, INC.


By:        *s/ Guy Clark*
GUY CLARK – OBA #1698
*Northcutt, Clark, Gardner, Hron & Brune*
P.O. Drawer 1669
Ponca City, OK 74602-1669
Telephone: (580) 762-1655
Facsimile: (580) 765-4142
*Attorneys for Defendants, B & G Oil Company and Wellco Energy, Inc.*

# BRIEF IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

## I.  STANDARD FOR MOTIONS

**A.     STANDARD FOR MOTION TO DISMISS FOR WANT OF SUBJECT MATTER JURISDICTION.**

The Court has wide latitude in considering both the allegations of the First Amended Complaint and matters outside the allegations of the First Amended Complaint when considering a Rule 12(b)(1) motion.  *White v Commissioner of Internal Revenue*, 899 F. Supp. 767 (D. Mass. 1995), 771.  A court can look beyond the pleadings to other material information in order to determine jurisdiction. *Paper, Allied Indus. Chem. & Energy Workers Union v Continental Carbon Co.*, 428 F.3d 1285 (10th Cir. 2005), 1292; Wright & Miller, *Federal Practice & Procedure: Civil*, §1363 (1990).  The attachment of information in addition to the pleadings does not convert a Rule 12(b)(1) motion to a motion for summary judgment under Rule 56. *Gonzales v U.S.*, 284 F.3d 281 (1st Cir. 2002), 288.

Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may take one of two forms:

"A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction.  A factual attack goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction.  The court

3

has wide discretion to allow limited evidence and facts in order to determine the substance of its subject matter jurisdiction."

*Cunningham v Univ. of New Mexico Reagents*, 779 F. Supp. 2d 1273 (D. N.M. 2011), 1278; *New Mexicans for Bill Richardson v Gonzales*, 64 F.3d 1495 (10th Cir. 1995), 1499.

**B.     STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(7).**

Where the owner of land affected or to be affected by a federal court is a

sovereign and cannot be joined, the court does not have subject matter jurisdiction.

*California v Arizona*, 99 S. Ct. 919, 440 U.S. 59, 59 L. Ed. 2d 144 (1979); *Ward v*

*Humble Oil & Refining Co.*, 321 F.2d 775 (5th Cir. 1963) [suit to cancel oil and gas

lease of BLM required dismissal because U.S., a sovereign, was indispensable party

and could not be joined]; *Shaw v Udall*, 264 F. Supp. 390 (D.C. Dist. 1967) [court

has no jurisdiction under general equity powers to adjudicate strip of land owned by

U.S., an indispensable party, which is a sovereign and has not consented to be

sued].

## II.  INTRODUCTION

### A.    THE OSAGE MINERAL ESTATE.

The Osage Nation was unique among Indian nations in that it purchased its land in north central Oklahoma in what is now known as Osage County.  As such, it owned the surface and the minerals.  During the 1890's and until 1906, the Nation's Tribal Council granted large oil and gas concessions for development. Under the Osage Indian Act of 1906 (34 Stat. §539) the surface was allotted to individual Osages and the minerals were retained by the Osage Nation.  Under the Act of 1906, the Department of Interior was empowered to administer the development of the reserved mineral estate through regulations and by reviewing lease terms and managing lease terms prior to the Nation, through its Chief, granting oil and gas leases.  All Osage oil and gas leases are granted by the Osage Nation through its Principal Chief and all leases of the Individual Defendants have been executed and delivered by the Principal Chief of the Osage Nation.  (**Ex. 1**, Osage Lease Examples.)

### B.    PLAINTIFFS' AVERMENTS FAIL TO SUPPORT JURISDICTION.

Plaintiffs allege that they have claims against individual, non-federal, Defendants and unnamed Defendants for trespassing on their land under oil and gas leases signed by the Chief of the Osage Nation granting rights to explore and

develop the Osage Nation mineral estate.  However, Plaintiffs fail to join an essential party, that is, the Osage Nation, and, because of sovereign immunity, cannot join.

Plaintiffs proclaim their Complaint as an "appeal" under the Administrative Procedures Act; however, Plaintiffs fail to identify any current or pending adjudication or other Administrative Procedure Act event upon which to base their "appeal." Plaintiffs further proclaim that they are seeking declaratory judgment against the Bureau of Indian Affairs; however, they fail to identify any specific, current justiciable issue, other than a generalized statement of dissatisfaction with the BIA historic compliance with the National Environmental Policy Act of 1970.  Plaintiffs utilize these inspecific and unsupported statements as a basis for a complaint against the BIA to bootstrap a pendant jurisdiction claim against every present or past owner or operator of an Osage oil and gas lease.   Under the guise of the National Environmental Policy Act, a procedural statute directed solely to federal agencies, Plaintiffs would have the Court set aside and undo tens of thousands of leases granted by the Osage Nation and millions of dollars of investment and revenues generated for Osage head right holders through the Osage Nation mineral estate and forfeit private property, investment, revenue and vested interests, presumably dating back to 1970, but under the terms of the pleadings, as far back as 1896.

## III.  ARGUMENT AND AUTHORITIES

**A.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OF THE ALLEGED CLAIMS OF PLAINTIFFS AGAINST THE INDIVIDUAL DEFENDANTS.**

**1.   NEPA Is a Procedural Policy Which Applies Only to Federal Agencies.**

The National Environmental Policy Act (NEPA) is a procedural statute which places upon federal agencies an obligation to consider significant aspects of the environmental impact of proposed actions.  *Citizens Comm. to Save Our Canyons v Krueger*, 513 F.3d 1169 (10th Cir. 2008), 1170-8.   NEPA does not require agencies to elevate environmental concerns over other appropriate considerations, but only that the agency take a "hard look" at environmental consequences and as to whether such action is a major federal action.  *Wild Earth Guardians v U.S. Forest Serv.*, 668 F. Supp. 2d 1314 (D. N.M. 2009), 1321.  However, it is not the role of the courts to second guess the environmental assessment or judgment of the federal agency.  *Citizens Comm. to Save Our Canyons v Krueger*, at 1177.

In other words, NEPA prohibits uninformed — rather than unwise — agency action.  *Citizens Comm. to Save Our Canyons v Krueger*, at 1178.  *See also, The Silverton Snowmobile Club v U.S. Forest Serv.*, 433 F.3d 772 (10th Cir. 2006), 780.

Plaintiffs admit, and it is well established by NEPA, that NEPA only applies to "all agencies of the federal government" and does not apply to state governments — or to the Osage Nation or individuals or private entities.  42 U.S.C. §4332.  NEPA

itself is not a substantive statute and does not mandate any particular results, but is procedural only and applies only to federal agencies. *D.O.T. v Public Citizen,* 124 S. Ct. 2004, 541 U.S. 752, 159 L. Ed.2d 60 (2004); *Wild Earth Guardians v U.S. Forest Serv.*, at 1326.

NEPA furnishes no basis for subject matter jurisdiction over the Individual Defendants even when disguised as pendant jurisdiction.

**2.     There Exists No Underlying APA Final Adjudication to Support an APA "Appeal" Nor Any Discrete Justiciable Event or Issue.**

NEPA creates no private right of action, particularly against the Individual Defendants, and Plaintiffs' claim that this Court has subject matter jurisdiction over the Individual Defendants under NEPA or under pendent jurisdiction is not supported by the law. Plaintiffs have not pled or identified any ripe agency action for "appeal" and certainly no current agency action involving a named Individual Defendant. 5 U.S.C. §702. A "party aggrieved" must first have an agency "final action" and must exhaust the prescribed administrative remedies, including appeals to superior agency, as prerequisite to judicial review. *Jech v Dept. of Interior*, 483 F. App'x 555 (2012) (unpublished) (copy attached).

Plaintiffs have shown none of the requisites for a legitimate APA appeal and have essentially admitted that none exist. Without such requisites, this Court does not acquire jurisdiction of Plaintiffs' First Amended Complaint.

3.      **The Doctrine of Mootness Applies to a Challenged NEPA Complaint.**

Even if the Court accepted the invitation to assume jurisdiction to overturn standing Osage leases, royalties, over a century of regulations, much of which are focused on environmental operations and effects, and set aside tens of thousands of transactions and investments, the leases and permits Plaintiffs seek to void, have already long been completed so that the alleged appellate review sought by Plaintiffs is moot. *Florida Wildlife Fed'n v Goldschmidt*, 611 F.2d 547 (5th Cir. 1980).

In *Florida Wildlife Fed'n*, the plaintiffs brought an action for declaratory relief, mandamus and injunctive relief against the Secretary of Transportation on the construction of an interstate highway in Florida.  The highway was basically completed when the action was brought.  Therein, the highway was basically complete and the Circuit Court of Appeals found that the environmental assessments performed in relationship to the highway and whether or not it was a major federal action and other actions of the Department are not to be second guessed by the Court (or the citizens committee) and that, since the highway was basically complete, it was moot.  The Court remanded it to the district court and directed dismissal of the action.

Moot cases are those in which an actual controversy may have existed but, by the passage of time or a change in circumstances, ceases to exist.  Both state and federal courts generally refuse to hear challenges to either permits or contracts

9

for construction once the construction has been substantially completed.   For instance, substantial completion of a retail complex rendered moot challenges to the validity of an Army Corps of Engineers permit for construction of the complex. _Bayou Liberty Ass'n v U.S. Army Corps_, 217 F.3d 393 (5th Cir. 2000), 397. Similarly, requests for declaratory injunctive relief on the grounds that contracts for construction of sewer treatment facilities were not property awarded as required by governmental procedural requirements was held to be moot when the facility was 98% complete.  _Luterbach Constr. Co. v Adamkus_, 781 F.2d 599 (7th Cir. 1986), 602.

Plaintiffs seek a declaratory judgment to void thousands of leases which have already been let, explored, developed and produced, with millions of dollars of royalties paid into the Osage mineral estate.  Even if there was a scintilla of validity to the Plaintiffs' claims, the doctrine of mootness removes it from an actual controversy at this time over which this Court has subject matter jurisdiction of the Individual Defendants' leases and property.

**B.    THE PLAINTIFFS HAVE NOT, AND CANNOT, JOIN THE OSAGE NATION WHICH, AS THE OWNER OF THE OSAGE MINERAL ESTATE, HAS GRANTED EVERY LEASE CHALLENGED BY THE PLAINTIFFS AND IS AN ESSENTIAL PARTY WHICH CANNOT BE REQUIRED TO WAIVE ITS SOVEREIGN IMMUNITY IN THIS SUIT.**

FED. R. CIV. P. 19(a) requires the joinder of every party essential to a complete adjudication of the proposed action.

The Osage Nation purchased and owns the Osage mineral estate.  Every lease of the Osage mineral estate is granted by the Osage Nation through its Principal Chief.  (**Ex. 1**, Osage Mineral Leases.)  The Nation is not joined in this action.  The Osage Nation is a sovereign and protected from suit without its consent.  Reaffirmation of Certain Rights of Osage Tribe, Pub. L. 108-431, 118 Stat. 2609 (2004); *Cherokee Nation v State of Oklahoma*, 461 F.2d 674 (10th Cir. 1972), 681.  Nor is it likely that the Osage Nation would ever waive its sovereign immunity in order to be joined in this action which seeks to void all of its oil and gas leases and to void its collection of royalties over 100 years.

In *Superior Oil Co. v U.S.*, 353 F.2d 34 (9th Cir. 1965), Superior sought to enjoin U.S. employees as trust owners of Hopi land from baring access across U.S. land.  Court affirmed dismissal for failure to join indispensable party, stating:

> "Concededly the United States has not consented to be sued for injunction and the question before us is whether this lack of consent is fatal to the jurisdiction of the District Court.  If the officers in barring access to Reservation lands were acting within the cope of their authority, they were acting for the tribe and for the United States in its trust capacity.  The injunction, in effect, would be one against the United States and the United States would be an indispensable party.  In absence of its consent to suit, suit could not be maintained."

353 F.2d 34, 36.

*See also, <u>California v Arizona</u>*, 99 S. Ct. 919, 440 U.S. 59, 59 L. Ed.2d 144 (1979); <u>Ward v Humble Oil & Refining Co.</u>, 321 F.2d 775 (5th Cir. 1963); <u>Shaw v Udall</u>, 264 F. Supp. 390 (D.C. Dist. 1967).

If the Court determines that the Osage Nation is a necessary party under Rule 19(a) and it is not feasible to join such party, the Court must then determine whether "in equity and good conscience" the action should proceed among the existing parties without the Nation or whether it should be dismissed.  FED. R. CIV. P. 19(b); <u>Citizen Potawatomi Nation v Norton</u>, 248 P.3d 993 (10th Cir. 2001), 997.

> "Finally, if joinder is not feasible, the court must decide whether the absent person is 'indispensable', i.e. whether in 'equity and good conscience' the action can continue in his absence.  The factors the court considers include:
>
> > First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in a person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."

The nature of the facts and the relief sought by Plaintiffs dictate that the action be dismissed.  In the case now before this Court, the Plaintiffs challenge existing and completed lease agreements and wells.  Plaintiffs seek to "void *ab initio*" transactions already completed.  Plaintiffs identify no specific pending or prospective

12

action to be taken and upon which NEPA factors should be brought to bear.  All of the Defendants are existing lessees, well owners or producers.

Where the action challenged is completed and involves "vested" rights, as opposed to "*inchoate*" interests, the affected party to the vested interest is an indispensable party. *Citizen Potawatomi Nation v Norton*, 248 P.3d 993 (10th Cir. 2001), 997.  In *Citizen Potawatomi Nation*, the plaintiff sued the Department of Interior challenging the calculation of funding from tribal self-governance compacts to which other tribes also subscribed and were parties.  The other tribes were protected by sovereign immunity.  The Court determined that, because vested rights were to be affected, the case did not involve *inchoate* or prospective rights, but existing vested right and, therefore, should be dismissed for failure to join an indispensable party.

The facts in the case now before this Court, like the facts in *Citizen Potawatomi Nation*, are distinguishable from cases in which the sovereign's vested interests are not changed, cancelled or altered, but rather where some delay is required in order to meet a NEPA-imposed action by a federal agency.  For instance, in *Manygoats v Kleppe*, 588 P.2d 556 (10th Cir. 1977), members of Navajo Tribe sought to enjoin the commencement of an agreement whereby the Navajo Tribe granted to Exxon the right to mine uranium on tribal lands.  The Secretary of Interior approved the agreement after an environmental impact statement was prepared and

13

published.  The Navajo Tribe, party to the agreement, was not joined and could not be joined.  The Tenth Circuit reversed the trial court's dismissal for failure to join an indispensable party, applying the standards of RULE 19(b), on the basis that the judicial review and action on the environmental impact statement does not "necessarily result in prejudice to the Tribe", the only result of the requested relief would be some delay for a new EIS, if required:

> "The requested relief does not call for any action by or against the Tribe."
>
> *Manygoats v Kleppe*, at 558-9.

In *Manygoats*, because there was no destruction or impact on a vested interest, other than a potential delay to satisfy NEPA, if required, the Court found that, in equity and good conscience, the case could proceed in the absence of the Tribe.  *Manygoats v Kleppe*, 559.

The case now before the Court is entirely different in that substantial and long-standing existing leases, production and royalties are sought to be terminated and cancelled and be held void.  This is not a mere delay to allow a NEPA observation, but the destruction of the existing development of the Osage mineral estate.

The Osage Nation, as the owner of its mineral estate, is an indispensable party without whom the case should be dismissed.

## IV. CONCLUSION

Plaintiffs have failed to establish any basis for jurisdiction of this Court over the claims and remedies requested in their First Amended Complaint against the Individual Defendants.

Plaintiffs rely upon the National Environmental Policy Act of 1970 (42 U.S.C. §4332) to set aside, cancel and void oil and gas leases of the Osage Nation held by the Individual Defendants.  Plaintiffs entirely fail to identify any "final agency action" or adjudication under the APA from which they allegedly appeal nor to identify any basis for the application of the Administrative Procedure Act appellate jurisdiction set out in 5 U.S.C. §702, *et seq.*  Nor have the Plaintiffs identified any compliance with administrative appeals and exhaustion of administrative remedies of the unidentified and unspecified final agency actions.

The National Environmental Policy Act applies only to federal agencies and not to private parties or non-federal entities, including the Osage Nation.  Plaintiffs' attempt to bootstrap the Individual Defendants into this suit by claiming that all actions of the Agency over the past 45 years are void.  The purpose of NEPA is not to provide a substantive or private cause of action, but is a procedural statute directed to federal agencies directing them to identify environmental concerns, the existence of major federal actions and the environmental impact of such actions.

15

The federal courts will not accept jurisdiction of a moot issue or claim.  Not only have the Plaintiffs failed to identify a pending or current action, virtually all of the Defendants' leases referred to by Plaintiffs were granted and the wells completed years ago, rendering any procedural compliance with NEPA moot.  The doctrine of mootness has specifically been applied to NEPA claims to defeat federal jurisdiction.

The Osage mineral estate is owned by the Osage Nation, which is a sovereign tribal nation whose oil and gas leases, royalties and interests the Plaintiffs seek to set aside, cancel and destroy.  As such, the Osage Nation is an indispensable party to these proceedings which seek to render impotent its leases and royalties.  The Osage Nation is sovereign, cannot be joined without its consent and there is no indication that such consent has or will occur.  Consequently, this case must be dismissed for failure to join an indispensable party pursuant to FED. R. CIV. P. 12(b)(7) and 19.

Individual Defendants respectfully submit that this Court is without jurisdiction to hear the First Amended Complaint of Plaintiffs filed herein.

Respectfully Submitted,

B & G OIL COMPANY
WELLCO ENERGY, INC.


By:   _____*s/ Guy Clark*_____
GUY CLARK – OBA #1698

16

*Northcutt, Clark, Gardner, Hron & Brune*
P.O. Drawer 1669
Ponca City, OK 74602-1669
Telephone: (580) 762-1655
Facsimile: (580) 765-4142
*Attorneys for Defendants, B & G Oil Company
and Wellco Energy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2014, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Gentner F. Drummond – OBA #16645
Garry M. Gaskins, II – OBA #20212
Donald A. Lepp – OBA #16260
J. Randall Miller – OBA #6214
Wendy P. Drummond – OBA #21697
DRUMMOND LAW, PLLC
1500 S. Utica, Ste. 400
Tulsa, OK 74104-6522
(918) 749-7378
(918) 749-7869 [facsimile]
gfd@drumlaw.com
gmg@drumlaw.com
dal@drumlaw.com
wpd@drumlaw.com
federalfilings@drumlaw.com
aft@drumlaw.com
has@drumlaw.com
*Attorneys for Plaintiffs*

Cathryn D. McClanahan – OBA #14853
Wyn Dee Baker – OBA #465
UNITED STATES ATTORNEY'S OFFICE
110 W. 7th St., Ste. 300
Tulsa, OK 74119-1013
(918) 382-2700
(918) 560-7939 [facsimile]
cathy.mcclanahan@usdoj.gov
wyndee.baker@usdoj.gov
carie.s.mcwilliams@usdoj.gov
christina.watson@usdoj.gov
connie.sullivent@usdoj.gov
            AND
Stephen R. Terrell – CA Bar #210004
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-0275
(202) 616-9663
(202) 305-0506 [facsimile]
stephen.terrell@usdoj.gov
efile_nrs.enrd@usdoj.gov
*Attorneys for Defendant, United States of America, Department of Interior, ex rel. Bureau of Indian Affairs*

James M. Chaney – OBA #1606
KIRK & CHANEY
101 Park Ave., Ste. 800
Oklahoma Ctiy, OK 73102-7202
(405) 235-1333
(405) 235-5914 [facsimile]
chaney@kirkandchaney.com
cjones@kirkandchaney.com
standard@kirkandchaney.com
*Attorney for Defendant, Cardinal River Energy I LP*

J. Kevin Hayes
Pamela Anderson
HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON
320 S. Boston Ave., Ste. 200
Tulsa, OK 74103-3706
(918) 594-0400
khayes@hallestill.com
panderson@hallestill.com
ghambrick@hallestill.com
lwest@hallestill.com
lhooks@hallestill.com
*Attorneys for Defendants, CEP Mid-Continent LLC & Halcon Resources Corporation*

Nicholas V. Merkley – OBA #20284
FELLERS SNIDER BLANKENSHIP
BAILEY & TIPPENS, P.C.
100 N. Broadway, Ste. 1700
Opklahoma City, OK 73102
(405) 232-0621
(405) 232-9659 [facsimile]
mmerkley@fellerssnider.com
lpeebles@fellerssnider.com
npaulk@fellerssnider.com
            AND
Anthony J. Shaheen – CO Bar #14295
Christopher A. Chrisman – CO Bar #33132
HOLLAND & HART, LLP
555 17th St., Ste. 3200
Denver, CO 80202-3979
(303) 295-8054
(303) 291-9126 [facsimile]
ajshaheen@hollandhart.com
cachrisman@hollandhart.com
*Attorney for Defendant, Chaparral Energy, LLC*

Mary Quinn Cooper – OBA #11966
Charles Greenough – OBA #12311
Laura J. Long – OBA #22215
MCAFEE & TAFT
1717 S. Boulder Ave., Ste. 900
Tulsa, OK 74119-4844
(918) 587-0000
(918) 599-9317 [facsimile]
maryquinn.cooper@mcafeetaft.com
charles.greenough@mcafeetaft.com
laura.long@mcafeetaft.com
karen.dutton@mcafeetaft.com
judy.yarber@mcafeetaft.com
valary.gwinn@mcafeetaft.com
anna.deshazo@mcafeetaft.com
julia.wallis@mcafeetaft.com
            AND

Timothy J. Bomhoff – OBA #13172
MCAFEE & TAFT
10th Fl., Two Leadership Sq.
211 N. Robinson Ave.
Oklahoma City, OK 73102-7139
(405) 235-9621
(405) 235-0439 [facsimile]
tim.bomhoff@mcafeetaft.com
sandy.lewis@mcafeetaft.com
            AND
Robert C. Mathes – CO Bar #32324
BJORK LINDLEY LITTLE PC
1600 Stout St., Ste. 1400
Denver, CO 80202
(303) 892-1400
(303) 892-1401 [facsimile]
rmathes@bjorklindley.com
sgunter@bjorklindley.com
*Attorneys for Defendant, Devon Energy Production Company, L.P.*

Frederic Dorwart – OBA #2436
J. Michael Medina – OBA #6113
Paul DeMuro – OBA #17605
Miriam LeeAnn Sweetin – OBA #30270
FREDERIC DORWART, LAWYERS
124 E. 4th St.
Tulsa, OK 74103
(918) 583-9922
(918) 583-8251 [facsimile]
fdorwart@fdlaw.com
mmedina@fdlaw.com
msweetin@fdlaw.com
pdemuro@fdlaw.com
vvessels@fdlaw.com
pcreek@fdlaw.com
ttripp@fdlaw.com
cwilson@fdlaw.com
*Attorneys for Defendants, Kaiser-Francis Anadarko, LLC & Nadel and Gussman, LLC*

C. Michael Copeland – OBA #13261
JONES, GOTCHER & BOGAN, P.C.
15 E. 5th St., Ste. 3800
Tulsa, OK 74103
(918) 581-8200
(918) 583-1189 [facsimile]
mcopeland@jonesgotcher.com
acleveland@jonesgotcher.com
akirk@jonesgotcher.com
*Attorney for Defendant, Lamamco Drilling, Inc.*

Gregory D. Nellis – OBA #6609
Carol J. Allen – OBA #18255
ATKINSON, HASKINS, NELLIS, BRITTINGHAM,
   GLADD & FIASCO, P.C.
525 S. Main, Ste. 1500
Tulsa, OK 74101-4524
(918) 582-8877
(918) 585-8096 [facsimile]
gnellis@ahn-law.com
callen@ahn-law.com
ECF@ahn-law.com
*Attorneys for Defendant, The Link Oil Company*

Bruce W. Robinett – OBA #7667
Jess M. Kane – OBA #22418
Rick D. Tucker – OBA #15864
BREWER, WORTEN, ROBINETT
P.O. Box 1066
Bartlesville, OK 74005-1066
(918) 336-4132
(918) 336-9009 [facsimile]
bwrobinett@bwrlawoffice.com
jkane@bwrlawoffice.com
rick@bwrlawoffice.com
dae@bwrlawoffice.com
*Attorneys for Defendants, Performance Energy
Resources, LLC; Short Oil, LLC; Marco Oil Company,
LLC; Osage Energy Resources, LLC; Helmer Oil
Corp.; and Clear Mountain Production, LLC*

Jack H. Santee – OBA #7903
Scott V. Morgan – OBA #30183
MOYERS MARTIN, LLP
401 S. Boston Ave., Ste. 1100
Tulsa, OK 74103-4028
(918) 582-5281
(918) 585-8318 [facsimile]
santee@moyersmartin.com
svmorgan@moyersmartin.com
pmelton@moyersmartin.com
rachelle@moyersmartin.com
*Attorneys for Defendant, Revard Oil & Gas Properties,
Inc.*

Brian T. Inbody – OBA #17188
MCNAMARA, INBODY & PARRISH, PLLC
1437 S. Boulder Ave., Ste. 1210
Tulsa, OK 74119-3609
(918) 599-0300
binbody@mcnamlaw.com
ckempthorne@mcnamlaw.com
*Attorneys for Defendants, Sullivan and Company, LLC;
Sullivan Wildcreek, LLC; Spyglass Energy Company,
LLC; Orion Exploration, LLC & Warren American Oil
Company*

Gerald L. Hilsher – OBA #4218
Robert J. Joyce – OBA #12728
Christina M. Vaughn – OBA #21390
MCAFEE & TAFT
1717 S. Boulder Ave., Ste. 900
Tulsa, OK 74119-4844
(918) 587-0000
(918) 599-9317 [facsimile]
gerald.hilsher@mcafeetaft.com
robert.joyce@mcafeetaft.com
christina.vaughn@mcafeetaft.com
amy.deatherage@mcafeetaft.com
pam.mappin@mcafeetaft.com
*Attorneys for Defendant, Encana Oil & Gas (USA), Inc.*

Thomas M. Ladner – OBA #5161
LADNER & ELDREDGE, PLLC
320 S. Boston Ave., Ste. 1026
Tulsa, OK 74103
(918) 582-3032
(918) 582-3075 [facsimile]
tladner@lelegal.com
*Attorney for Defendant, Black Lava Resources, LLC*

_S/ Guy Clark_
GUY CLARK

Jech v. Department of Interior, 483 Fed.Appx. 555 (2012)

483 Fed.Appx. 555
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also Tenth
Circuit Rule 32.1. (Find CTA10 Rule 32.1)
United States Court of Appeals,
Tenth Circuit.

Cora Jean **JECH**; Charles **Tillman**;
Dudley Whitehorn; Joe Hall; Joanna
Barbara; R.E. Yarbrough; Cody Tucker;
John Johnson, Plaintiffs–Appellants,

v.

DEPARTMENT OF INTERIOR; Ken
Salazar, Secretary of the Interior; Bureau of
Indian Affairs; Larry Echohawk, Assistant
Secretary, Indian Affairs; The United
States of America, Defendants–Appellees.

No. 11–5064.   |   June 19, 2012.

**Synopsis**
**Background:** Owners of interests in mineral estate sued
the United States, the Department of the Interior and its
Secretary, and the Bureau of Indian Affairs (BIA) and its
Secretary, seeking injunctive and declaratory relief that would
require the Department of the Interior to conduct elections
for officials of mineral estate of Indian tribe. The United
States District Court for the Northern District of Oklahoma
dismissed the complaint for failure to exhaust administrative
remedies, and owners appealed.

**Holdings:** The Court of Appeals, Bobby R. Baldock, Circuit
Judge, held that:

[1] agency's inaction was not subject to judicial review since
mineral estate owners failed to exhaust their administrative
remedies, and

[2] exhaustion of administrative remedies would not have
been futile.

Affirmed.

West Headnotes (2)

[1]   **Indians**
      ⟜ Conditions Precedent; Exhaustion
      Department of the Interior's refusal to conduct
      election for officials of mineral estate of Indian
      tribe was not subject to judicial review since
      mineral estate owners failed to exhaust their
      administrative remedies; letters from various
      Bureau of Indian Affairs (BIA) personnel, as
      well as Department's refusal to conduct the
      election did not qualify as final agency action
      since Department did not explain fully its
      reasoning, nor was it afforded an opportunity to
      correct any errors prior to judicial intervention. 5
      U.S.C.A. § 704; 25 C.F.R. §§ 2.6, 2.8.

      Cases that cite this headnote

[2]   **Indians**
      ⟜ Conditions Precedent; Exhaustion
      Exhaustion of administrative remedies prior
      to seeking judicial review of Department of
      the Interior's refusal to conduct election for
      officials of mineral estate of Indian tribe would
      not have been futile as court would have
      benefited from allowing the agency to develop
      a full administrative record on the purely legal
      question upon which appeal was based. 5
      U.S.C.A. § 704; 25 C.F.R. §§ 2.6, 2.8.

      Cases that cite this headnote

**Attorneys and Law Firms**

 **\*556**  William R. Grimm, Cori D. Powell, Barrow, Gaddis,
Griffith & Grimm, Tulsa, OK, for Plaintiffs–Appellants.

Katherine Wade Hazard, Barbara M.R. Marvin, United States
Department of Justice, Washington, DC, Phil E. Pinnell,
Esq., Office of the United States Attorney, Tulsa, OK, for
Defendants–Appellees.

Before TYMKOVICH and BALDOCK, Circuit Judges, and BRORBY, Senior Circuit Judge.

## ORDER AND JUDGMENT [*]

BOBBY R. BALDOCK, Circuit Judge.

Plaintiffs appeal the district court's order dismissing their complaint for failure to exhaust administrative remedies. They sued the United States of America, the Department of the Interior ("DOI") and its Secretary, and the Bureau of Indian Affairs ("BIA") and its Secretary. [1] They sought injunctive and declaratory relief that would require the DOI to conduct the elections for Principal Chief, Assistant Principal Chief, and Tribal Council of the Mineral Estate (collectively, "Mineral Estate Officials") of the Osage Tribe of Indians ("Osage Tribe"). We affirm.

## I. Background

The underlying facts are not in dispute. Plaintiffs are owners of interests in the Osage Mineral Estate. These interests, called "headrights," entitle the owner to receive mineral revenue distributions from production of the Mineral Estate. Headright owners are referred to as "shareholders." Headrights may be owned by non-Osage; not all Osage own headrights. Headrights pass to the heirs, devisees, and assigns of the owners. A shareholder may **\*557** own a fractionalized interest in a headright or interests in many headrights. Income to a shareholder from the Mineral Estate is based on his or her headright interests.

The Osage Allotment Act of 1906, as amended ("1906 Act"), created the Mineral Estate, identified the original shareholders, and provided that headrights would pass to their heirs, devisees, and assigns. *See* Act of June 28, 1906, Pub.L. No. 59–820, 34 Stat. 539 (1906). The 1906 Act also prescribed the form of the Osage Tribal government, including the election of Chiefs and a Tribal Council. Under the 1906 Act, only shareholders were allowed to vote and the tribal officials also had to be shareholders. Each voter was entitled to a weighted ballot based on the value of his or her headright interest.

In 2004, Congress enacted the Reaffirmation of Certain Rights of the Osage Tribe, Pub.L. No. 108–431, 118 Stat. 2609 (2004) ("Reaffirmation Act"). Congress recognized that many people were considered Osage, but under the 1906 Act only shareholders were "members" of the Osage Tribe. The Reaffirmation Act clarified that "legal membership" in the Osage Tribe meant headright owners, *id.* § 1(a)(2) & (3), and reaffirmed "the inherent sovereign right of the Osage Tribe to determine its own form of government," *id.* § 1(b)(2). According to plaintiffs, the Reaffirmation Act was intended "to clarify the right of all Osage people to be considered tribal members and self-govern tribal affairs *outside* the Mineral[ ] Estate." Aplt. Opening Br. at 7.

Following enactment of the Reaffirmation Act, the Osage Tribe adopted a new Constitution of the Osage Nation. The new Constitution changed the election rules to allow all adult members of the Osage Tribe to vote in tribal elections, even if they were not headright owners. In addition, tribe members who did not own headrights could hold tribal office. Concerned that their headrights would be governed by Mineral Estate Officials who were neither shareholders nor elected solely by shareholders, various shareholders wrote to the BIA and demanded that it conduct the 2006 election for the governing body of the Mineral Estate pursuant to the 1906 Act, i.e., allow only shareholders to vote. *See* 25 C.F.R. Part 90 (governing DOI's conduct of Osage elections). The BIA responded by issuing several letters, all refusing the demands by plaintiff Tillman and others to conduct the election, stating that the new Osage Constitution was consistent with the Reaffirmation Act.

Plaintiffs did not appeal the BIA's decision to the Interior Board of Indian Appeals ("IBIA"), but instead filed the underlying lawsuit. They sought a declaratory judgment and a mandatory injunction to require the DOI to conduct tribal elections whereby Mineral Estate Officials would be elected only by shareholders. They claimed that the DOI had the responsibility to administer the tribal elections and to supervise the ratification of the Osage Constitution. They asserted that their headright interests were diminished by allowing non-headright owners to exercise primary control and authority over the Mineral Estate.

Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6). [2] A magistrate judge recommended granting defendants' motion to dismiss due to plaintiffs' failure to exhaust administrative remedies. The magistrate judge reasoned that plaintiffs were required to file an appeal with the IBIA and that because they failed to do so, "the BIA's decision [was] **\*558** not eligible for judicial review." Aplt.App. at 330. The district court conducted a de novo review and

*Jech v. Department of Interior,* 483 Fed.Appx. 555 (2012)

adopted the magistrate judge's recommendation to grant defendants' motion to dismiss. Plaintiffs appeal, asserting that the letters from BIA officials represented final agency action or, alternatively, that exhaustion would have been futile.

## II. Analysis

This court has jurisdiction to review claims for relief other than money damages against the United States, its agencies, and officers acting in their official capacity under the Administrative Procedure Act ("APA"). *Rural Water Sewer & Solid Waste Mgmt. v. City of Guthrie,* 654 F.3d 1058, 1070 (10th Cir.2011) (citing 5 U.S.C. § 702); *see also Bowen v. Massachusetts,* 487 U.S. 879, 893, 910, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (holding APA authorized review of agency action and grant of relief that was not "money damages"). We may, however, "review only 'final agency actions.'" *McKeen v. U.S. Forest Serv.,* 615 F.3d 1244, 1253 (10th Cir.2010) (quoting 5 U.S.C. § 704). "[T]he hallmarks of APA finality" are: (1) the agency "determined rights or obligations;" (2) "legal consequences flow" from the agency action; and (3) the agency action "marks the consummation of the agency's decisionmaking process." *Sackett v. EPA,* —— U.S. ——, 132 S.Ct. 1367, 1371–72, 182 L.Ed.2d 367 (2012) (internal quotation marks omitted) (ellipsis omitted). In addition, "[t]he APA's judicial review provision ... requires that the person seeking APA review of final agency action have 'no other adequate remedy in a court.'" *Id.* at 1372 (quoting 5 U.S.C. § 704). Dismissals under either Rule 12(b)(1) or 12(b)(6) "for failure to exhaust administrative remedies under the BIA's regulations ... are generally reviewed de novo." *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1294 (10th Cir.2003); *see also id.* at 1295 (noting that any findings of jurisdictional facts are reviewed for clear error).

"A party must exhaust administrative remedies when a statute or agency rule dictates that exhaustion is required." *Coosewoon v. Meridian Oil Co.,* 25 F.3d 920, 924 (10th Cir.1994). Pursuant to the DOI's regulations, "[n]o decision, which at the time of its rendition is subject to appeal to a superior authority in the [DOI], shall be considered final so as to constitute Departmental action subject to judicial review," absent concerns not applicable here. 25 C.F.R. § 2.6(a). Where an official has failed to act, such as failing to conduct elections for the Mineral Estate Officials as plaintiffs allege, the appeal process requires the party to file a written request that "the official take the action originally asked of him/her; (2)[d]escribe the interest adversely affected by the

official's inaction;" and (3) state that an appeal shall be filed unless the official takes action within ten days of his or her receipt of the written request or sets a date by which action will be taken. 25 C.F.R. § 2.8(a). The official "must respond within ten days of receipt of the request by either issuing a decision on the merits of the request or establishing a later date by which a decision shall be made." *Coosewoon,* 25 F.3d at 925 (citing 25 C.F.R. § 2.8(b)).

[1] Plaintiffs acknowledge that they did not follow these appeal procedures. They assert, however, that the letters from various BIA personnel, as well as the DOI's refusal to conduct the 2006 election, qualify as final agency action. Plaintiffs also complain that the DOI did not conduct the election held in 2010, but issues concerning that election were not raised in the district court and will not be addressed here. *See* **\*559** *ClearOne Commc'ns, Inc. v. Biamp Sys.,* 653 F.3d 1163, 1182 (10th Cir.2011) ("This court will generally not consider an argument that was not raised in the district court."). Plaintiffs contend that (1) the letters announced the DOI's settled agency position, (2) the letter from the Assistant Secretary of Indian Affairs is final agency action, and (3) the decision set forth in the letters "was final when rendered because it would not be made inoperative pending appeal and it was a decision from which legal consequences flow," Aplt. Opening Br. at 17.

It is undisputed that the BIA personnel who wrote to the shareholders consistently declined to step in and conduct the 2006 election. One of the letters was issued by the Assistant Secretary of Indian Affairs. As the regulations provide and defendants concede, a letter from the Assistant Secretary can be a final agency action. *See* 25 C.F.R. § 2.6(c). Plaintiffs may not now argue, however, that the Assistant Secretary's letter constitutes final agency action pursuant to § 2.6(c), because they did not present this argument to the magistrate judge. *See ClearOne Commc'ns, Inc.,* 653 F.3d at 1185 (holding party had waived an issue not raised to the magistrate judge).

None of the letters explains the BIA's reasoning for its conclusion that "[t]he Osage Constitution, adopted by a vote of the Osage people, upholds the intent and direction of the Congress," Aplt.App. at 285 (Jan. 28, 2008, letter from Assistant Secretary–Indian Affairs). Absent an appeal to the IBIA, the DOI did not explain fully its reasoning, nor was it afforded "an opportunity to correct [any] errors prior to judicial intervention, thus mooting many issues before they reach the courts," *St. Regis Paper Co. v. Marshall,* 591 F.2d 612, 613 (10th Cir.1979).

Plaintiffs rely on authority from the District of Columbia for their claim that the BIA letters were final agency action because they reflected the settled position of the DOI and legal consequences flowed from the letters. *E.g., Seminole Nation of Okla. v. Norton,* 223 F.Supp.2d 122, 126–29, 142 (D.D.C.2002) (chronicling long and complex administrative history, which included two agency appeals; concluding that one of many letters issued by the BIA was "sufficient to constitute final agency action"). Plaintiffs therefore contend that they were not required to file an appeal to the IBIA.

Under the circumstances of this case, we decline to depart from our circuit authority concerning agency exhaustion. The exhaustion requirement " 'recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.' " *United Tribe of Shawnee Indians v. United States,* 253 F.3d 543, 550 (10th Cir.2001) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). The requirement is particularly forceful "when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* (internal quotation marks omitted). As noted, none of the letters from the BIA provides an analysis of the agency's position concerning the 1906 Act, the Reaffirmation Act, the new Constitution of the Osage Nation, or 25 C.F.R. Part 90. Moreover, the record before us does not include all the letters written to the BIA, so we cannot ascertain the precise issues the DOI was asked to address.[3]

**\*560** Plaintiffs further argue that the DOI's refusal to conduct the 2006 election was subject to judicial review because the refusal was not made inoperative pending appeal. *See Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) ("[W]here the APA applies, an appeal to a superior agency is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." (internal quotation marks omitted)). As the magistrate judge pointed out, plaintiffs do not explain how the DOI's *refusal to act* to conduct the 2006 election could be made inoperative. Aplt.App. at 331–32. Moreover, the agency's rules require

appeal of the agency's inaction. *See* 25 C.F.R. §§ 2.6(a), 2.8; *Coosewoon,* 25 F.3d at 925 (holding plaintiff was required to comply with DOI's administrative appeal requirement to challenge agency's refusal to act).

**[2]** Plaintiffs also contend that even if the BIA letters did not constitute final agency action, plaintiffs were not required to exhaust administrative remedies because exhaustion would have been futile. The futility exception may apply where (1) the agency "lacked the authority or the ability to resolve [the dispute]," (2) the case presents "purely a question of statutory interpretation," or (3) "the court would not benefit from allowing the [agency] to develop a full administrative record on the issue." *Forest Guardians v. U.S. Forest Serv.,* 641 F.3d 423, 433 (10th Cir.2011) (per curiam).

Considering these criteria, we conclude that exhaustion would not be futile. There is no dispute that the agency had the authority to grant the relief plaintiffs sought. Plaintiffs focus on the second criterion, arguing that the pivotal issue concerns the purely legal question of the Reaffirmation Act's effect on the 1906 Act with respect to the Mineral Estate. But we determine that the third criterion prevails. Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *United Tribe of Shawnee Indians,* 253 F.3d at 550 (internal quotation marks omitted). "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). We conclude that requiring plaintiffs to exhaust their claims would further these purposes and so would not be futile.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.

**Parallel Citations**

2012 WL 2308715 (C.A.10 (Okla.))

Footnotes

\*      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

1      The BIA is an agency in the DOI. *Woods Petroleum Corp. v. Dep't of Interior,* 47 F.3d 1032, 1035 (10th Cir.1995).

2      The motion to dismiss also invoked Rule 12(b)(7) (failure to join a party), but this rule is not pertinent to the issues presented on appeal.

3      We determine that the letters from the BIA do not constitute final agency action; therefore, we need not resolve the BIA's argument that letters addressed to a non-party cannot satisfy the exhaustion requirement.

**End of Document**                                          © 2014 Thomson Reuters. No claim to original U.S. Government Works.