# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

[1] MARTHA DONELSON and [2] JOHN FRIEND,  )
ON BEHALF OF THEMSELVES AND ON BEHALF  )
OF ALL SIMILARLY SITUATED PERSONS,  )
                                          )
                Plaintiffs,  )
                                           )
v.  )  Case No.14-CV-316-JHP-FHM
                                           )
[1] UNITED STATES OF AMERICA; DEPARTMENT  )
OF INTERIOR; BUREAU OF INDIAN AFFAIRS;  )
[2] DEVON ENERGY PRODUCTION COMPANY,  )
L.P., [3] CHAPARRAL ENERGY, LLC; [4] ENCANA  )
OIL & GAS (USA), INC.; [5] PERFORMANCE  )
ENERGY RESOURCES, LLC; [6] CEJA  )
CORPORATION; [7] CEP MID-CONTINENT, LLC;  )
[8] LINN ENERGY HOLDINGS, LLC;  )
[9] SULLIVAN & COMPANY, LLC; [10] CARDINAL  )
RIVER ENERGY, LP; [11] REVARD OIL & GAS  )
PROPERTIES, INC.; [12] BLACK LAVA  )
RESORUCES, LLC; [13] B & G OIL COMPANY;  )
[14] ORION EXPLORATION, LLC; [15] NADEL  )
AND GUSSMAN, LLC; [16] LAMMAMCO  )
DRILLING, LLC; [17] CLEAR MOUNTAIN  )
PRODUCTION, LLC; [18] SHORT OIL, LLC;  )
[19] WELLCO ENERGY, INC.; [20] RAM ENERGY  )
RESOURCES, INC.; [21] MARCO OIL COMPANY,  )
LLC; [22] BGI RESOURCES, LLC; [23] HALCON  )
RESOURCES CORPORATION; [24] THE LINK OIL  )
COMPANY; [25] OSAGE ENERGY RESOURCES,  )
LLC; [26] TOOMEY OIL COMPANY, INC.; [27]  )
KAISER-FRANCIS ANADARKO, LLC;  )
[28] HELMER OIL CORP; [29] SPYGLASS ENERGY  )
GROUP, LLC; AND ALL OTHER LESSEES AND  )
OPERATORS AND OPERATORS WHO HAVE  )
OBTAINED A CONCESSION AGREEMENT, LEASE  )
OR DRILLING PERMIT APPROVED BY THE BIA  )
IN OSAGE COUNTY IN VIOLATION OF NEPA,  )
                                           )
              Defendants.  )

**DEFENDANTS DEVON ENERGY PRODUCTION CO., L.P.
AND LINN ENERGY HOLDINGS, LLC'S
<u>MOTION TO DISMISS AND BRIEF IN SUPPORT</u>**

Timothy J. Bomhoff, OBA #13172
Laura J. Long, OBA #22215
MCAFEE & TAFT A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
tim.bomhoff@mcafeetaft.com
laura.long@mcafeetaft.com

and

Mary Quinn-Cooper, OBA #11966
Charles Greenough, OBA#12311
Jessica John Bowman, OBA# 30388
Jason McVicker, OBA#31150
MCAFEE & TAFT A PROFESSIONAL CORPORATION
1717 South Boulder, Suite 900
Tulsa, OK 74119
Telephone:   (918) 587-0000
Facsimile:   (918) 599-9317
charles.greenough.@mcafeetaft.com
maryquinn.cooper@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS
DEVON ENERGY PRODUCTION COMPANY,
L.P. AND LINN ENERGY HOLDINGS, LLC**

and

Robert Charles Mathes
BJORK LINDLEY LITTLE PC
1600 Stout St. Ste. 1400
Denver, CO 80202
Telephone:   (303) 892-1400
Facsimile:   (303) 892-1401
mmathes@bjorklindley.com

**ATTORNEY FOR DEFENDANT
DEVON ENERGY PRODUCTION COMPANY,
L.P.**

2

and

L. Poe Leggette
Mark S. Barron
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80202
Telephone: 303.861.0600
pleggette@bakerlaw.com
mbarron@bakerlaw.com

**ATTORNEYS FOR DEFENDANT LINN
ENERGY HOLDINGS, LLC**

October 6, 2014

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENTS AND AUTHORITIES...................................................................................2

I.     THE ACTION SHOULD BE DISMISSED FOR FAILURE TO JOIN AN
INDISPENSABLE PARTY................................................................................................2

        A.     The Nation is a required party ..............................................................3

        B.     The Nation is a sovereign entity that cannot be joined as a party.............6

        C.     The suit cannot proceed among the existing parties in equity
and good conscience ..............................................................................7

II.     PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES...................11

III.     BIA'S ALLEGED FAILURES ARE NOT REMEDIABLE UNDER THE APA ............14

IV.     THE ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ......17

        A.     Plaintiffs' Claims are Untimely On the Face of Their Complaint .........17

        B.     Plaintiffs' State Law Claims Fail as a Matter of Law............................18

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Alabama-Coushatta Tribe of Texas v. U.S.,*
757 F.3d 484 (5th Cir. 2014) ...............................................................................16, 17

*Begay v. Public Service Co. of New Mexico,*
710 F. Supp. 2d 1161 (D.N.M. 2010) ...............................................................13

*Citizen Potawatomi Nation v. Norton,*
248 F.3d 993 (10th Cir. 2001) ...............................................................3, 4, 6, 8

*Colo. Farm Bureau Federation v. U.S. Forest Serv.,*
220 F.3d 1171 (10th Cir. 2000) ...............................................................15

*Ctr. for Biological Diversity v. Pizarchik,*
858 F. Supp. 2d 1221 (D. Colo. 2012)...............................................................5, 9

*Darby v. Cisneros,*
509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993)...................................11

*Davis v. United States,*
192 F.3d 951 (10th Cir. 1999) ...............................................................7

*Davis v. United States,*
343 F.3d 1282 (10th Cir. 2003) ...............................................................8, 9

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel,*
883 F.2d 890 (10th Cir. 1989) ...............................................................2, 5-6, 7, 8

*Fanin v. U.S. Dep't of Veterans Affairs,*
572 F.3d 868 (11th Cir. 2009) ...............................................................15

*Fletcher v. United States,*
116 F.3d 1315 (10th Cir. 1997) ...............................................................2, 7

*Gabelli v. S.E.C.,*
568 U.S. __, 133 S. Ct. 1216 (2013)...............................................................18

*Gilmore v. Weatherford,*
694 F.3d 1160 (10th Cir. 2012) ...............................................................11

*Impact Energy Resources, LLC v. Salazar,*
693 F.3d 1239 (10th Cir. 2012) ...............................................................18

*James v. U.S. Dept. of Health & Human Serv.,*
    824 F.2d 1132 (D.C. Cir. 1987) ...................................................................12

*Jicarilla Apache Tribe v. Hodel,*
    821 F.2d 537 (10th Cir. 1987) .....................................................................4

*Kescoli v. Babbit,*
    101 F.3d 1304 (9th Cir. 1996) .....................................................................4

*Kickapoo Tribe of Okla. v. Lujan,*
    728 F. Supp. 791 (D.D.C. 1990) ..................................................................9

*Kiowa Tribe v. Mfg. Technologies, Inc.,*
    523 U.S. 751 (1998).....................................................................................6

*Lujan v. Nat'l Wildlife Fed.,*
    497 U.S. 871 (1990)...........................................................................15, 17

*Makah Indian Tribe v. Verity,*
    910 F.2d 555 (9th Cir. 1990) ....................................................................10

*Manygoats v. Kleppe,*
    558 F.2d 556 (10th Cir. 1977) .............................................................10, 11

*McCarthy v. Madigan,*
    503 U.S. 140 (1992)...................................................................................12

*Norton v. S. Utah Wilderness Alliance ("SUWA"),*
    542 U.S. 55 (2004)...............................................................................14, 15

*Okla. Tax Commn. v. Citizen Band Potawatomi Indian Tribe of Okla.,*
    498 U.S. 505 (1991).....................................................................................6

*Osage Tribe of Indians of Okla. v. United States,*
    72 Fed. Cl. 629 (Fed. Cl. 2006) .............................................................4, 12

*Philippines v. Pimentel,*
    553 U.S. 851, 128 S.Ct. 2180 (2008)...........................................................2

*Public Lands for the People, Inc. v. U.S. Dep't of Ag.,*
    733 F. Supp. 2d 1172 (E. D. Calif. 2010) ..................................................15

*Sisseton-Wahpeton Oyate v. U.S. Dep't of State,*
    659 F. Supp.2d 1071 (D.S.D. 2009) ...........................................................15

*Tewa Tesuque v. Morton,*
 498 F.2d 240 (10th Cir. 1974)
 *cert. denied,* 420 U.S. 962, 95 S.Ct. 1353,
 43 L.Ed.2d 440 (1975) ...................................................................................2, 10, 11

*United Keetowah Band of Cherokee Indians in Okla. v. Kempthorn,*
 630 F.Supp.2d 1296 (E.D. Okla. 2009) ..........................................................2, 5, 7, 8, 9

*United Keetoowah Band of Cherokee Indians v. Mankiller,*
 2 F.3d 1161, 1993 WL 307937
 (10th Cir. Aug. 12, 1993)................................................................................ 2-3

*United States v. City of Las Cruces,*
 289 F.3d 1170 (10th Cir. 2002) ......................................................................9

*United States ex rel. Hall v. Tribal Development Corp.,*
 100 F.3d 476 (7th Cir. 1996) ..........................................................................10

*United Tribe of Shawnee Indians v. United States,*
 253 F.3d 543 (10th Cir. 2001) .........................................................................11, 12

*W. Watersheds Project v. Bureau of Land Mgmt.,*
 629 F.Supp.2d 951 (D.Ariz. 2009) ..................................................................15-16

*Wichita & Affiliated Tribes of Okla. v. Hodel,*
 788 F.2d 765 (D.C.Cir. 1986)..........................................................................8, 9

**OTHER AUTHORITIES**

Fed.R.Civ.P. 12................................................................................................1, 2

Fed.R.Civ.P. 19................................................................................................3, 7

25 C.F.R. § 2.3 ................................................................................................14

25 C.F.R. § 2.6 ................................................................................................14

25 C.F.R. § 226................................................................................................13

5 U.S.C. § 702.................................................................................................14, 16, 17

5 U.S.C. § 706.................................................................................................14

28 U.S.C. § 2401.............................................................................................18

Act of June 28, 1906, 34 Stat. 539, *et seq.*....................................................3

Act of October 21, 1978, 92 Stat. 1660 ..........................................................................................3

Defendants Devon Energy Production Co., L.P. and Linn Energy Holdings, LLC (collectively "Defendants") move the Court to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1), (6), and (7).

## INTRODUCTION

Plaintiffs filed this action seeking declaratory relief, injunctive relief and tort damages. The thrust of Plaintiffs' complaint is that the federal government's compliance with the National Environmental Policy Act ("NEPA") was deficient.  Plaintiffs challenge all leasing decisions, drilling permits, and concession agreements the Bureau of Indian Affairs ("BIA") Osage Agency approved since 1979 within the boundaries of Osage County, Oklahoma.  Plaintiffs demand an end to virtually all oil and gas activities in Osage County *and* the retroactive rescission of decades of oil and gas leases.  Osage County is among the top oil-producing counties in the United States; the grave legal and economic ramifications of Plaintiffs' claims cannot be overstated.

Plaintiffs' allegations fail to acknowledge that the Osage Nation ("the Nation") is the lessor of each lease at issue.  The Nation is both necessary and indispensable under federal law, but its sovereign immunity makes joinder impossible.  Equity and good conscience dictate this action should not proceed among the existing parties.  Plaintiffs have also failed to exhaust their administrative remedies, denying this Court subject matter jurisdiction.  Even if Plaintiffs had taken the requisite administrative steps, the United States is immune from generalized challenges, such as this one, that attack an agency's approach to decision-making, rather than attacking a discrete agency action.  Finally, Plaintiffs' claims are time-barred on their face under

state and federal statutes of limitations, and the state-law claims fail to state a claim for which relief may be granted.  Dismissal is proper.

**ARGUMENTS AND AUTHORITIES**

## I.    THE ACTION SHOULD BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

Where a lawsuit fails to name an indispensable party as a defendant, the remedy is dismissal.  Fed.R.Civ.P. 12(b)(7).  Under Rule 19 of the Federal Rules of Civil Procedure, a court must dismiss an action if: (1) an absent party is required, (2) it is not feasible to join the absent party and (3) it is determined "in equity and good conscience" that the action should not proceed among the existing parties.  *United Keetowah Band of Cherokee Indians in Okla. v. Kempthorn*, 630 F. Supp. 2d 1296, 1301 (E.D. Okla. 2009) (citing *Philippines v. Pimentel*, 553 U.S. 851, 128 S. Ct. 2180 (2008)).

The United States Court of Appeals for the Tenth Circuit has held the Nation is a necessary and indispensable party in cases that have the potential to impact the Osage mineral estate.  In *Fletcher v. United States*, 116 F.3d 1315 (10th Cir. 1997), the Court observed the Nation was both necessary and indispensable because the relief sought posed a practical threat to the Nation's "obligations to protect the Osage mineral estate."  *Id.* at 1333, n.26.  The Tenth Circuit noted "[w]e have dismissed cases under Rule 19(b) when a tribe cannot be joined to a suit on account of sovereign immunity."  *Id.* (citing *Enter. Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 893–94 (10th Cir. 1989) (dismissing tribal contract claim); *Tewa Tesuque v. Morton*, 498 F.2d 240, 242–43 (10th Cir. 1974) (dismissing NEPA claim), *cert. denied,* 420 U.S. 962, 95 S. Ct. 1353 (1975); *United Keetoowah Band of Cherokee Indians v. Mankiller*, 2

2

F.3d 1161, 1993 WL 307937 (10th Cir. Aug. 12, 1993) (unpublished)).  Because each element of

Rule 19 is satisfied here, dismissal is required.

### D.      The Nation is a required party.

A party is required under Rule 19 if complete relief cannot be accorded among existing

parties to the action in its absence, if the party's absence would potentially subject existing

parties to inconsistent judgments or obligations, or if the absent party's ability to protect its

interest relating to the subject of the action will be impaired.  Fed.R.Civ.P. 19(a); *Citizen*

*Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).  The Nation is a necessary

party because the Court cannot grant complete relief without it.  Even if Plaintiffs prevail against

the current Defendants, the Nation could continue to assert rights under the leases, thereby

subjecting existing parties to the risk of inconsistent obligations or judgments.  And the Nation's

ability to protect its legally recognized interests in the leases subject to cancellation would be

substantially impaired in its absence.

The Plaintiffs' Amended Complaint seeks a declaration cancelling all oil and gas leases

in Osage County, Oklahoma. [*See* Am. Compl., Dkt. 46, ¶¶ 108-114.]  These leases exist in a

unique historical and statutory context.

> The 1906 Act [Act of June 28, 1906, ch. 3527, 34 Stat. 539], titled "An act for the
> division of the lands and funds of the Osage Indians in Oklahoma Territory, and
> for other purposes," provides, by section 2, "[t]hat all lands belonging to the
> Osage tribe ... shall be divided among the members of said tribe" with minor
> exceptions for retaining small tracts primarily for administrative and educational
> facilities. 34 Stat. at 540. Section 3 of the 1906 Act reserved oil, gas, coal and
> other minerals to the Tribe for a period of twenty-five years and provides that
> "leases for all oil, gas, and other minerals ... may be made by the Osage tribe of
> Indians through its tribal council, and with the approval of the Secretary of the
> Interior, and under such rules and regulations as he may prescribe." 34 Stat. at
> 543. This reservation of the mineral interests to the Tribe has been routinely
> extended over time, and it was made a reservation in perpetuity by the Act of
> October 21, 1978, Pub. L. No. 95-496, 92 Stat. 1660.

*Osage Tribe of Indians of Okla. v. United States*, 72 Fed. Cl. 629, 632 (Fed. Cl. 2006) (footnote omitted). The Nation leases lands and the Secretary of the Interior approves the leases. *Id.* The Nation is a party to each and every oil and gas lease in Osage County—the very leases Plaintiffs attack in their Complaint. [Leases attached as Exhibit 1.]

A party to a lease or contract is the quintessential indispensable party. "[N]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable." *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 (10th Cir. 1987). In *Jicarilla*, the Tenth Circuit affirmed the dismissal of a suit challenging oil and gas leases on a tribal reservation. The Court found that since the tribe held interests in the leases and could not be joined because of its sovereign immunity, dismissal was required. The case at hand presents the same issue and should be decided in the same way.

In *Citizen Potawatomi Nation*, the plaintiff challenged federal methods for calculating funds received through certain contracts to five tribes. 248 F.3d at 997-1001. Four tribes were absent. Relying on the basic principle that a party to a contract is the paradigm of a "required party," the Tenth Circuit held the four absent tribes to be required under Rule 19(a), and affirmed dismissal of the plaintiff's claims. *Id.* at 999, 1001. Similarly, in *United States ex rel. Hall v. Tribal Development Corp.*, 100 F.3d 476, 477 (7th Cir. 1996), the plaintiff sought to void contracts regarding goods and services for casinos between an absent tribe and the Tribal Development Corporation. The court held that the absent tribe had a clear commercial stake in the outcome and it was "beyond dispute" that the absent tribe was a necessary party. *Id.* at 479. The United States Court of Appeals for the Ninth Circuit applied the same reasoning in *Kescoli v. Babbit*, 101 F.3d 1304, 1310 (9th Cir. 1996), finding that the Navajo and Hopi nations were

required parties in a suit challenging a mining permit the federal government approved, because the case would affect the tribes' lease agreements with the mining company.

The Nation is also a necessary party pursuant to Rule 19(a)(1)(B)(i) because it "claims an interest relating to the subject of the action and is so situated that disposing of the action in [its] absence may . . . as a practical matter impair or impede [its] ability to protect the interest." As lessor, the Nation's interests in the leases and other contracts at issue in this case are at least equal to those Plaintiffs possess.  Like Plaintiffs, the Nation has an interest in the property that is the subject of this action.  Moreover, the Nation has a particular interest in the oil and gas leases that are being challenged by Plaintiffs, as those leases provide an important ongoing source of revenue to the Nation, and the Nation has acted in accordance with its understanding that the leases are valid and enforceable.  It would be unfair to permit an action seeking cancellation of those leases to proceed without allowing the Nation to defend its interests and assert arguments in support of its position that the leases are not subject to cancellation.  If the leases and contracts at issue in this case are cancelled, the Nation will lose a crucial source of revenue for the Nation itself and many of its individual members that own a right to receive revenue from the leases. The Nation's ability to protect its "plain, clear and vital interest" in the leases would be substantially impaired in its absence, and the Nation is therefore a necessary party to this action. *United Keetowah Band*, 630 F. Supp. 2d at 1302-03.

Neither the United States nor any other party named in this case can adequately represent the Nation or protect its interests in this action, because no other party shares the Nation's economic interest in ensuring the uninterrupted continuation of the development of its mineral resources.  *Ctr. for Biological Diversity v. Pizarchik*, 858 F. Supp. 2d 1221, 1227 (D. Colo. 2012); *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 893-94 (10th

Cir. 1989).   Instead, the duties and responsibilities of the federal Defendants may actually conflict with the interests of the Nation. *Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977).   Moreover, the Nation's interest in this litigation is not limited to an interest in contract rights and revenues.   Adjudicating the Nation's contract rights without the Nation's consent "would also effectively abrogate the Tribe's sovereign immunity." *Enter. Mgmt. Consultants*, 883 F.2d at 894.   This latter concern is of significance, because the Nation's right not to be sued without its consent is not one that any other party, including the BIA, can protect.   While the federal government has a general trust relationship with the Nation, the Nation's "interest here in its sovereign right not to have its legal duties judicially determined without consent is an interest which the United States' presence in this case cannot protect." *Id.*

In sum, the Court cannot join the sovereign Nation in this action, and any judgment entered in this action cannot bind the Nation.   Thus, even if Plaintiffs prevail, any relief granted in this matter will be incomplete and piecemeal.   There is a substantial probability that any order entered by this Court will adversely impact the rights and interests of the Nation, and that the obligations resulting from any such order will directly conflict with those obligations owed to the sovereign, non-party Nation.   Under such circumstances, Rule 19 mandates dismissal.

### E.      The Nation is a sovereign entity that cannot be joined as a party.

Under Rule 19(a), a required party must be joined if feasible.   In this case, tribal sovereign immunity renders any effort to join the Nation unfeasible.   The Nation is not subject to suit unless the Nation clearly and expressly waives its immunity or the suit is authorized by Congress.   *Citizen Potawatomi Nation*, 248 F.3d at 997 (citing *Okla. Tax Commn. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991)); *accord Kiowa Tribe v. Mfg. Technologies, Inc.*, 523 U.S. 751 (1998).

The Tenth Circuit has acknowledged the Nation's sovereign immunity. *Fletcher*, 116 F.3d at 1324. In *Fletcher*, the Tenth Circuit observed that Indian tribes "exercise inherent sovereign authority," explaining that, "[a]s an aspect of this sovereign immunity, suits against tribes are barred in the absence of an unequivocally expressed waiver by the tribe or abrogation by Congress." *Id.* Congress has not abrogated the Nation's sovereign immunity, nor has the tribe expressed any "unequivocal" waiver. *Id.* at 1324-25. The Nation is immune from suit, and joinder is unfeasible for the purposes of Rule 19. *United Keetoowah Band*, 630 F. Supp. 2d at 1303. The Court must therefore consider whether the case can proceed at all without the Nation.

**F.    The suit cannot proceed among the existing parties in equity and good conscience.**

When a non-party is necessary but joinder is unfeasible, the Court must consider whether the case can proceed among the existing parties in equity and good conscience. Fed.R.Civ.P. 19(b). The Tenth Circuit has observed a "strong policy" favoring dismissal of a case when a tribe cannot be joined because of its sovereign immunity. *Davis v. United States*, 192 F.3d 951, 960 (10th Cir. 1999) (citing *Enter. Mgmt. Consultants, Inc.*, 883 F.2d at 894). Rule 19(b) provides four factors the Court must weigh to determine if dismissal is proper. All four factors weigh in favor of dismissal here.

The first factor is the extent to which a judgment rendered in the party's absence might prejudice that party or existing parties. Fed.R.Civ.P. 19(b)(1). This factor weighs heavily in favor of dismissal. The consideration of prejudice under Rule 19(b)(1) "is essentially the same as the inquiry under [Rule 19(a)(1)(B)] into whether the continuation of the action without the absent party will impair the ability of that party to protect its interest." *United Keetoowah Band*, 630 F. Supp. 2d at 1304 (quoting *Enter. Mgmt. Consultants*, 883 F.2d at 894, n.4) (quotation

marks omitted). As discussed above, because a judgment voiding the Nation's contracts in its absence would prejudice the Nation and its interests, this factor alone represents a sufficient basis for the Court to dismiss this action. "When, as here, a necessary party under Rule 19(a) is immune from suit, 'there is very little room for balancing of other factors' set out in Rule 19(b), because immunity 'may be viewed as one of those interests compelling by themselves.'" *Enter. Mgmt. Consultants*, 883 F.2d at 894 (quoting *Wichita & Affiliated Tribes of Okla.*, 788 F.2d 768, 777 n.13 (D.C. Cir. 1986)) (internal quotation marks omitted). Because it is immunity that keeps the Nation from being joined, the application of Rule 19(b)'s equitable factors is necessarily truncated. Under these circumstances, the court's discretion is narrowed and the nature of the Nation's interests renders Rule 19(b)'s remaining factors to the periphery—"the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." *Wichita & Affiliated Tribes*, 788 F.2d at 777.

The second factor is the extent to which prejudice could be lessened or avoided by shaping the relief or judgment. This factor also weighs in favor of dismissal. Plaintiffs seek dismissal of *all* of the Nation's leases. Given this, there is no protective order the Court could insert into a judgment to lessen or avoid prejudice to the Nation. The Nation is lessor of each of the leases at issue, and any order altering or voiding the leases would necessarily prejudice the Nation. *United Keetowah Band*, 630 F. Supp. 2d at 1304 (quoting *Citizen Potawatomi Nation*, 248 F.3d at 1001) (emphasizing that "*there was no way to lessen that prejudice*").

The third factor turns on whether a judgment rendered in the necessary party's absence would adequately resolve the dispute. *Davis v. United States*, 343 F.3d 1282, 1292-93 (10th Cir. 2003). Adequacy in this context "refers to the public stake in settling disputes by wholes, whenever possible" and addresses the "social interest in the efficient administration of justice

and the avoidance of multiple litigation." *Ctr. for Biological Diversity v. Pizarchik*, 858 F. Supp. 2d 1221, 1229 (D. Colo. 2012) (quoting *Pimentel*, 128 S. Ct. at 2193) (citations and internal quotation marks omitted).  Because the Court's judgment in this action would not be binding on the Nation, the Nation could subsequently file a separate lawsuit to assert its interest, potentially resulting in conflicting obligations for parties to the current dispute and duplicative litigation. *See Kickapoo Tribe of Okla. v. Lujan*, 728 F. Supp. 791, 796 (D.D.C. 1990); *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002).  These results would be contrary to Rule 19(b)'s policy of avoiding inefficient administration of justice. *Davis*, 343 F.3d at 1292-93 (citing *Pimentel*, 128 S. Ct. at 2193).  The public interest is not served when the federal government is forced to waste resources defending multiple lawsuits.  *Id.*  The third factor weighs in favor of dismissal.

The fourth factor turns on whether the plaintiffs will have an adequate remedy if the case is dismissed.  Although Plaintiffs' Amended Complaint challenges agency action, Plaintiffs do not seek any administrative relief.  The failure to exhaust administrative remedies is an independent basis to dismiss this action, *see infra*, but it also demonstrates that Plaintiffs have an alternative remedy to this lawsuit.  Whether that administrative remedy is equivalent to a judicial remedy is immaterial—the doctrine of tribal sovereign immunity contemplates situations in which a plaintiff will have *no* remedy.  As the Court observed in *United Keetowah Band*, "[d]ismissal based on tribal sovereign immunity, despite the lack of an available alternative forum 'is less troublesome' than in other cases because 'dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit.'" 630 F. Supp. 2d at 1304 (quoting *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986)); *see also, e.g.*, *Pimentel*, 128 S. Ct. at 2194 (acknowledging that "[d]ismissal under Rule 19(b) will mean, in

some instances, that plaintiffs will be left without a forum for definitive resolution of their claims," but explaining that such a "result is contemplated under the doctrine of foreign sovereign immunity"); *United States ex rel. Hall*, 100 F.3d at 480 ("A plaintiff's inability to seek relief, however, does not automatically preclude dismissal, particularly where that inability results from a tribe's exercise of its right to sovereign immunity."); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990) (holding that "lack of an alternative forum does not automatically prevent dismissal of a suit" because "[s]overeign immunity may leave a party with no forum for its claims" (citations omitted)).

It is anticipated that Plaintiffs may point to dicta in *Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977), to support their action.  The plaintiffs in *Manygoats* were individual Indians who challenged the sufficiency of an Environmental Impact Statement ("EIS") that was prepared in association with an agreement that the Navajo Nation granted to Exxon Corporation authorizing Exxon to explore for and mine uranium on tribal lands.  *Id.* at 557.  The district court dismissed the plaintiffs' action for failure to join the Navajo Nation, an indispensable party.  *Id.* In reversing the district court's dismissal, the Tenth Circuit explained that the facts in *Manygoats* were distinct from cases such as this one seeking cancellation of a leasehold interest held by a tribe.  The Tenth Circuit in *Manygoats* referenced its earlier decision in *Tewa Tesuque v. Morton*, 498 F.2d 240, 243 (10th Cir. 1974), a case in which the court observed that cancellation of an existing leasehold interest would "have the immediate effect of depriving the [tribe] of valuable rights under a contract."  Were plaintiffs to prevail in *Manygoats*, by contrast, all that would have occurred was that a new EIS would have to be prepared.  *See Manygoats*, 558 F.2d at 558-59.  The Navajo Nation would neither lose any past or existing revenue nor would any existing leases be cancelled.  The legitimacy of and enforceability of the exploration and mining

10

agreement would not necessarily be voided.  Such is not the case here.  The distinct facts of this case present risks of injury to the Nation that were not present in *Manygoats*.  Here, Plaintiffs seek to immediately declare existing leaseholds and contracts void.  Under such circumstances, the Tenth Circuit's holding in *Tewa Tesuque* is controlling and Plaintiffs' claims must be dismissed.

The Nation's presence is necessary because it is a party to every lease at issue in the case and has an interest in every related concession agreement, assignment, and permit.  Tribal sovereign immunity prevents the Nation's joinder and the case cannot proceed in equity and good conscience without the Nation.  Therefore, the Nation is an indispensable party that cannot be feasibly joined under Rule 19.  Accordingly, the Court should grant Defendants' Motion to Dismiss.

## II.    PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Although the failure to join an indispensable party bars this action, Plaintiffs' claims would also be properly dismissed because Plaintiffs have not exhausted the administrative remedies available to them.  Because Plaintiffs do not allege any administrative compliance, dismissal is proper.  *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001).

Plaintiffs' Amended Complaint explicitly arises under the Administrative Procedures Act ("APA").  [*See* Am. Compl., Dkt. 46, ¶¶ 68-71.]  "[E]xhaustion of APA claims is generally required."  *Gilmore v. Weatherford*, 694 F.3d 1160, 1166 (10th Cir. 2012) (citing *Darby v. Cisneros,* 509 U.S. 137, 146, 113 S. Ct. 2539 (1993)).  Exhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.  The doctrine

"recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

In *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543 (10th Cir. 2001), the Tenth Circuit affirmed an order dismissing a case for lack of subject matter jurisdiction, holding that exhaustion applied to an Indian group's effort to be designated as a federally recognized Indian tribe. The Tenth Circuit explained that, "exhaustion is required when, as here, a plaintiff attempts to bypass the regulatory framework for establishing that an Indian group exists as an Indian tribe." *Shawnee Indians*, 253 F.3d at 550. The Tenth Circuit held that, because Congress provided an administrative scheme for such recognition, and the Department of the Interior promulgated rules and regulations to enact the scheme, the Plaintiffs' attempt to bypass those rules and regulations undermined congressional and administrative intent. *Id.* at 551 (quoting *James v. U.S. Dept. of Health & Human Serv.*, 824 F.2d 1132 (D.C. Cir. 1987)). The Tenth Circuit further observed that exhaustion would provide a useful record for judicial review, particularly in the complex and technical factual context. *Id.* (quoting *McCarthy*, 503 U.S. at 145). And the Tenth Circuit recognized the special expertise the Department of the Interior brings to bear in dealing with tribal issues. *Id.*

The facts of this case are analogous to those the Tenth Circuit considered in *Shawnee Indians*. The BIA has unique expertise, authority, and regulations governing Osage leasing that require exhaustion. Congress has declared that the Department of the Interior shall regulate the Nation's mineral rights. *See Osage Tribe of Indians of Okla. v. United States*, 72 Fed. Cl. 629, 632 (Fed. Cl. 2006). The Department of the Interior has in turn promulgated regulations to carry

12

out Congress's intent. *See* 25 C.F.R. §§ 226.1 to 226.46. Given that all of Plaintiffs' claims are premised on agency decision making, judicial economy would be best served by permitting agency review, allowing for a more-developed record to aid any judicial analysis.

Other courts in this circuit have considered claims like the ones Plaintiffs raise in this action and dismissed those claims for failure to exhaust administrative remedies. In *Begay v. Public Service Co. of New Mexico*, 710 F. Supp. 2d 1161 (D.N.M. 2010), the United States District Court for the District of New Mexico considered the plaintiffs' allegations that the BIA had breached fiduciary duties to Indian surface owners when it approved rights-of-way on the Navajo Reservation without properly appraising the value of the rights-of-way and without advising landowners of the impact the rights-of-way would have on the land. *See id.* at 1175. The plaintiffs in *Begay* did not allege that they had contested or appealed any of the rights-of-way at the time the rights-of-way were issued, but instead contended that exhaustion was not required because they were challenging "an agency-wide breach of trust." *Id.* at 1203. The district court disagreed. The district court observed that "[b]ecause the Plaintiffs did not exercise their administrative rights and missed their opportunities for redress," they have "now formulated their argument into a challenge to a 'multi-year policy' of the Federal Defendants neglecting their trust duties." *Id.* at 1204. But "[h]aving not sought redress through the proper appeals process within the Department of the Interior for each right-of-way," the district court concluded that "Plaintiffs cannot now seek redress in federal court for all rights-of-way." *Id.*

Like the plaintiffs in *Begay*, Plaintiffs here had an administrative remedy to challenge any of the leasing and permitting decisions they felt were improper. BIA's regulations authorize appeals by persons aggrieved by Osage oil and gas leasing decisions "pursuant to 25 CFR part 2." 25 C.F.R. § 226.44. Part 2, in turn, provides mandatory appellate procedures applicable to

"all appeals from decisions made by officials of the Bureau of Indian Affairs by persons who may be adversely affected by such decisions." 25 C.F.R. § 2.3(b).  Under 25 C.F.R. § 2.6(a), exhaustion is required.  Yet Plaintiffs have not alleged, and no evidence exists to show, that they have exhausted their administrative remedies.

Having not sought redress through the proper appeals process for the approval of the individual leases and permits about which Plaintiffs complain, Plaintiffs cannot now seek redress in federal court for all leases and permits.  Plaintiffs' characterization of BIA's alleged failures as programmatic does not change the fact that there was an appeals process and an exhaustion requirement for each of the individual decisions upon which Plaintiffs' action is premised.  Because that "exhaustion requirement is not waivable, even by attempting to become a member of a class," *id.* at 1203, the Court must dismiss Plaintiffs' Complaint.

## III.   BIA'S ALLEGED FAILURES ARE NOT REMEDIABLE UNDER THE APA.

The Administrative Procedure Act authorizes suits by persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702.  The APA provides relief not only from agency action taken, but also for "agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  But this latter category is circumscribed.  A plaintiff cannot use the APA to compel an agency to implement a policy the plaintiff prefers; the APA "empowers a court to compel an agency only to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 64 (2004) (citation and  quotation marks omitted).  "[A] claim under [the APA] can proceed only where plaintiff asserts than an agency failed to take a *discrete* agency action that it is *required to take*." *Id.*  This limitation precludes a plaintiff from bringing a broad

14

programmatic attack that seeks "wholesale improvement" of a program, rather that the remediation of "some particular 'agency action' that causes it harm." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990).

In *Norton v. SUWA*, the Supreme Court rejected a challenge identical to the one Plaintiffs bring here as beyond the scope of the review the APA permitted. In that case, the plaintiff brought an action against the Department of the Interior raising generalized challenges regarding the Department's course of conduct, rather than challenging a specific, discrete agency action. *See SUWA*, 542 U.S. at 66, 67 ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA."). Like the plaintiffs in *Norton*, the Plaintiffs here do not raise APA claims premised on any discrete decision, but rather raise claims based upon a particular approach to decision-making. That Plaintiffs may have preferred as a matter of policy that BIA approach its environmental analysis differently is not a challenge that can be sustained under the APA.

Applying the Supreme Court's language in *Lujan* and *Norton v. SUWA*, the Tenth Circuit has held that APA plaintiffs have the "burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of section 551(13)." *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000). This position has been confirmed by courts in multiple other jurisdictions. *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 876 (11th Cir. 2009) ("Broad programmatic attacks against agencies are not permissible under the APA."); *Pub. Lands for the People, Inc. v. U.S. Dep't of Ag.*, 733 F. Supp. 2d 1172, 1183 (E.D. Calif. 2010) ("[O]nly 'discrete agency action' may be reviewed under the APA."); *Sisseton-Wahpeton Oyate v. U.S. Dep't of State*, 659 F. Supp. 2d 1071, 1081 (D.S.D. 2009) (plaintiff's complaint must identify "a particular agency action"); *W. Watersheds Project*

*v. Bureau of Land Mgmt.*, 629 F. Supp. 2d 951, 960 (D. Ariz. 2009) (court has no subject matter jurisdiction over APA claims that do not "identify some [particular] agency action").   The Plaintiffs' complaint fails to identify any particular agency action that is challenged and is instead postured as a programmatic challenge to the all leases, concessions, and permits approved within Osage County.  Such a programmatic challenge is not permissible and should be dismissed.

The United States Court of Appeals for the Fifth Circuit recently rejected a similar challenge the Alabama-Coushatta Tribe of Texas raised to the oil and gas leasing and timber programs in the Big Thicket National Preserve (National Park Service) and the Sam Houston and Davy Crockett National Forests (Forest Service and Bureau of Land Management).  *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 486 (5th Cir. 2014).  The Tribe sought declaratory relief that the past approvals of leases and permits violated federal law, and to enjoin any future such authorizations.  *Id.* at 487.  The Fifth Circuit noted that the Tribe "did not point to any identifying factors except for the alleged total number granted for a single lease, permit, or sale" of the oil and gas and timber resources.  *Id.* at 487 n.4.  The Fifth Circuit rejected the Tribe's challenge for its failure to point to specific agency action.  *Id.* at 491-92.

The Fifth Circuit further noted that the question of whether a plaintiff complains of a discrete agency action is jurisdictional in nature.  *Id.* at 487.  The United States may not be named as a defendant in an action unless it has specifically consented to suit; where such consent is absent, dismissal for lack of jurisdiction is required.  *Id.*  Although Congress "waived sovereign immunity for non-statutory causes of action against federal agencies" under section 702 of the APA, the waiver set forth in section 702 must be strictly construed in favor of the

government. *Id.* at 488. As the Fifth Circuit explained,[1] section 702 of the APA waives the government's sovereign immunity only in those cases in which the plaintiff identifies a discrete, identifiable agency action that affected the plaintiff in a specific way, and further demonstrates that the particular agency action has resulted in a legal injury to the plaintiff. *Id.* at 490. Because the Tribe's complaint failed "to point to any 'identifiable action or event,'" the statutory prerequisite to waiver had not been satisfied, and the court therefore lacked jurisdiction over the federal government. *Id.* (citing *Lujan*, 497 U.S. at 899). Like the Tribe in *Alabama-Coushatta*, Plaintiffs' complaint is "structured as a blanket challenge to *all* of the [BIA's] actions with respect to *all* permits and leases granted for natural resource extraction on a significantly large amount of land," without pointing to any specific identifying information for the agency actions at issue other than the total number of such actions plaintiffs believe to have been taken. *Id.* at 490, 491. Plaintiffs' complaint is the same type of impermissible, programmatic challenge the Fifth Circuit rejected in *Alabama-Coushatta* because it fails "to point to any 'identifiable action or event.'" *Lujan*, 497 U.S. at 899. Plaintiffs' claims must be dismissed.

## IV.   THE ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A.   Plaintiffs' Claims are Untimely On the Face of Their Complaint.

Plaintiffs challenge the application process for oil and gas leases, concession agreements, and drilling permits from 1979 to today. [Am. Compl., Dkt. 46, ¶¶ 72-103.] Plaintiffs demand a declaration from this Court voiding every lease, concession agreement, assignment, and drilling permit the Osage Agency Superintendent approved. [*Id.*, ¶¶ 113, 119, 120, 126.] The action is asserted on behalf of any surface owner of real property in Osage County whose property has ever been the subject of such a contract. [*Id.*, ¶ 153.] The sweeping breadth of these allegations

---

[1] The Fifth Circuit's analysis considered whether the Tribe's arguments were sufficient to satisfy section 702's waiver of sovereign immunity and give the court subject matter jurisdiction.

ignores legal limits on the timeliness of Plaintiffs' claims.  Plaintiffs cannot recover on these claims to the extent they are untimely.

NEPA does not provide a statute of limitations, but Plaintiffs' Amended Complaint arises out of the Administrative Procedures Act ("APA").  [*Id.*, ¶¶ 68-71.] The APA follows the general statute of limitations for claims against the United States.  Such claims must be filed within six years of accrual.  28 U.S.C. § 2401(a); *Impact Energy Resources, LLC v. Salazar*, 693 F.3d 1239, 1245-46 (10th Cir. 2012).  A claim accrues when the plaintiff has a complete and present cause of action.  *Gabelli v. S.E.C.*, 568 U.S. __, 133 S. Ct. 1216, 1220-21, (2013).  Plaintiffs allege, *inter alia*, that every lease, concession agreement, assignment, and drilling permit the Osage Agency Superintendent approved was void *ab initio*.  Under Plaintiffs' reasoning, these claims accrued at the time of approval.  Plaintiffs' Amended Complaint was filed on August 29, 2014, and the statute provides a six-year limitation.  Any agreement approved before August 29, 2008, cannot be challenged in this action.  To the extent Plaintiffs seek to attack any such agreement, or to raise claims premised on the invalidity of approvals executed before August 29, 2008, those claims are time-barred.

## B.    Plaintiffs' State Law Claims Fail as a Matter of Law.

Plaintiffs' claims for trespass, nuisance, negligence, and unjust enrichment fail as a matter of law.  Each of these state law claims is entirely derivative of Plaintiffs' NEPA challenge raised under the APA.  Each of these state law claims is premised and dependent on Plaintiffs' quest for declaratory judgment voiding all leases, concession agreements, assignments, and drilling permits in Osage County.  [Am. Compl., Dkt. 46, ¶¶ 131-133, 136-138, 141-142, 146, 148.]  But as explained above, Plaintiffs have not pled a viable challenge to that administrative action.  Because the case cannot proceed with regards to Plaintiffs' administrative claims for

18

declaratory judgment, the state law claims cannot stand.  Plaintiffs' state law claims, Counts 4 through 7, fail to state a claim for which relief can be granted and must be dismissed pursuant to Rule 12(b)(6).

## **CONCLUSION**

This action is properly dismissed for failure to join an indispensable party.  The Osage Nation is a necessary party, yet its sovereign immunity makes joinder unfeasible and equity and good conscience dictate the action should not proceed.  In addition to Rule 12(b)(7), Rule 12(b)(1) and Rule 12(b)(6) also dictate dismissal.  The Court does not have subject matter jurisdiction over this suit, because Plaintiffs have not exhausted their administrative remedies. The United States has not waived its sovereign immunity for the type of challenge Plaintiffs bring.  And a vast majority of Plaintiffs' allegations are time-barred on their face.  For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed.

DATED October 6, 2014

/s/ Mary Quinn Cooper
Mary Quinn-Cooper, OBA #11966
Charles Greenough, OBA#12311
Jessica John Bowman, OBA# 30388
Jason McVicker, OBA# 31150
MCAFEE & TAFT A PROFESSIONAL CORPORATION
1717 South Boulder, Suite 900
Tulsa, OK 74119
Telephone:     (918) 587-0000
Facsimile:     (918) 599-9317
charles.greenough.@mcafeetaft.com
maryquinn.cooper@mcafeetaft.com

and

Timothy J. Bomhoff, OBA #13172
Laura J. Long, OBA #22215
MCAFEE & TAFT A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
tim.bomhoff@mcafeetaft.com
laura.long@mcafeetaft.com


**ATTORNEYS FOR DEFENDANTS
DEVON ENERGY PRODUCTION COMPANY,
L.P. AND LINN ENERGY HOLDINGS, LLC**

and

Robert Charles Mathes
BJORK LINDLEY LITTLE PC
1600 Stout St. Ste. 1400
Denver, CO 80202
Telephone:    (303) 892-1400
Facsimile:    (303) 892-1401
mmathes@bjorklindley.com


**ATTORNEY FOR DEFENDANT
DEVON ENERGY PRODUCTION COMPANY,
L.P.**

and

L. Poe Leggette
Mark S. Barron
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80202
Telephone: 303.861.0600
pleggette@bakerlaw.com
mbarron@bakerlaw.com


**ATTORNEYS FOR DEFENDANT LINN
ENERGY HOLDINGS, LLC**

20

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System and transmittal of a Notice of Electronic Filing to all persons who have entered their appearance as ECF registrants in this case.

/s/ Mary Quinn Cooper