## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| [1] MARTHA DONELSON and [2] JOHN FRIEND, ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL SIMILARLY SITUATED PERSONS,<br><br>    Plaintiffs,<br><br>v.<br><br>[1] UNITED STATES OF AMERICA, DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS; [2] DEVON ENERGY PRODUCTION COMPANY, L.P.; [3] CHAPARRAL ENERGY, LLC; [4] ENCANA OIL & GAS (USA), INC.; [5] PERFORMANCE ENERGY RESOURCES, LLC; [6] CEJA CORPORATION; [7] CEP MID-CONTINENT, LLC; [8] LINN ENERGY HOLDINGS, LLC; [9] SULLIVAN 7 COMPANY, LLC; [10] CARDINAL RIVER ENERGY, LP; [11] REVARD OIL & GAS PROPERTIES, INC.; [12] BLACK LAVA RESOURCES, LLC; [13] B & G OIL COMPANY; [14] ORION EXPLORATION, LLC; [15] NADEL & GUSSMAN, LLC; [16] LAMMAMCO DRILLING, LLC; [17] CLEAR MOUNTAIN PRODUCTION, LLC; [18] SHORT OIL, LLC; [19] WELLCO ENERGY, INC.; [20] RAM ENERGY RESOURCES, INC.; [21] MARCO OIL COMPANY, LLC; [22] BGI RESOURCES, LLC; [23] HALCON RESOURCES CORPORATION; [24] THE LINK OIL COMPANY; [25] OSAGE ENERGY RESOURCES, LLC; [26] TOOMEY OIL COMPANY, INC.; [27] KAISER-FRANCIS ANADARKO, LLC; [28] HELMER OIL CORP; [29] SPYGLASS ENERGY GROUP, LLC; AND ALL OTHER LESSEES AND OPERATORS WHO HAVE OBTAINED A CONCESSION AGREEMENT, LEASE OR DRILLING PERMIT APPROVED BY THE BIA IN OSAGE COUNTY IN VIOLATION OF NEPA,<br><br>    Defendants. | Case No. 14-CV-316-JHP-FHM |

1

**MOTION TO DISMISS AND BRIEF IN SUPPORT SUBMITTED BY DEFENDANTS PERFORMANCE ENERGY RESOURCES, LLC, SHORT OIL, LLC, MARCO OIL COMPANY, LLC, OSAGE ENERGY RESOURCES, LLC, HELMER OIL CORP., AND CLEAR MOUNTAIN PRODUCTION, LLC**

This Motion to Dismiss is submitted jointly by the following Defendants: Performance Energy Resources, LLC, Short Oil, LLC, Marco Oil Company, LLC, Osage Energy Resources, LLC, Helmer Oil Corp., and Clear Mountain Production, LLC (hereinafter the "Moving Defendants"). In support, the Moving Defendants present the following arguments.

### INTRODUCTION

In the interest of judicial economy, Moving Defendants adopt and re-allege the summary of this litigation contained in the Introduction to the Motion to Dismiss and Brief in Support of co-Defendant's Devon Energy Production, L.P. and Linn Energy Holdings, L.L.C. [Dkt. 136], filed contemporaneously with this Motion.

### ARGUMENTS AND AUTHORITIES

**Proposition I. The Action Should be Dismissed pursuant to Fed.R.Civ.P. 12 (b)(1) for Lack of Standing, for the Reason that the Plaintiffs' Grievance Does Not Fall Within the Zone of Interests Protected by the Statutory Provisions Invoked.**

An economic injury is an insufficient basis for prudential standing within the meaning of the National Environmental Policy Act ("NEPA"). *Churchill Truck Lines, Inc. v. United States*, 533 F.2d 411, 416 (8th Cir. 1976). Prudential standing is ascertained according to the zone-of-interests test, that is "'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'"" *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). NEPA establishes a "broad national commitment to protecting and promoting environmental quality." *Central S. Dakota Co-Op Grazing v. Secretary*, 266 F.3d 889, 895 (8th Cir. 2001) (hereafter "Grazing"). "The

purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions." *Nev. Land Action Ass'n v. U.S. Forest Serv.,* 8 F.3d 713, 716 (9th Cir. 1993).

The interest sought to be protected by the Plaintiffs in the present action is one of an economic nature, which is made manifest by the stated claims and remedies requested. Each claim will be repeated here, with comment.

1) <u>First Claim for Declaratory Judgment: Leases</u>. Without alleging any specific injury, Plaintiffs claim to have standing because the leases "affect real property owned by Plaintiffs and Putative Plaintiff Class Members." [Amended Complaint, Dkt. 46, ¶110.] Plaintiffs do not make any assertions as to the Plaintiffs' or the public's environmental interest. Instead, Plaintiffs allege that the BIA's approval of the leases violate unspecified "rights" of Plaintiffs. [*Id.,* ¶ 112.] The requested remedy is that the leases be declared void *ab initio*. [*Id.,* ¶ 113.] This is not for the benefit of the public, but rather to lay the foundation for Plaintiffs' claims for trespass and negligence, for which monetary damages are sought.

2) <u>Second Claim for Declaratory Judgment: Concession Agreements</u>. Again, without alleging any specific injury, Plaintiffs claim to have standing because "the leases and drilling permits affect real property owned by Plaintiffs and Putative Plaintiff Class Members." [*Id.,* ¶ 117.] (Plaintiffs do <u>not</u> allege that their real property is affected by the concession agreements sought to be declared improperly approved.) Plaintiffs do not make any assertions as to the Plaintiffs' or the public's environmental interest. The requested remedy is a declaration that the leases under the concession agreements are void *ab initio*. [*Id.,* ¶ 119.] This is not for the benefit of the public, but rather to lay the foundation for Plaintiffs' claims for trespass and negligence for which monetary damages are sought.

3) <u>Third Claim for Declaratory Judgment: Drilling Permits</u>.  As with Plaintiffs' first and second claims, Plaintiffs claim to have standing because "the drilling permits affect real property owned by Plaintiffs and Putative Class Members." [*Id.,* ¶ 123.]  Plaintiffs do not make any assertions as to the Plaintiffs' or the public's environmental interest. Instead, Plaintiffs allege that the BIA's approval of the "APDs" violate unspecified "rights" of Plaintiffs. [*Id.,* ¶ 125.]  The requested remedy is that the drilling permits be declared void *ab initio*. [*Id.,* ¶ 126.]  This is not for the benefit of the public, but rather to lay the foundation for Plaintiffs' claims for trespass and negligence for which monetary damages are sought.

4. <u>Fourth Claim: Trespass</u>.  As remedy for their claim for common law trespass, Plaintiffs assert that they are "entitled to recover damages for injury to their property." [*Id.,* ¶ 134.] Plaintiffs do not make any assertions as to the Plaintiffs' or the public's environmental interest. Plaintiffs are simply seeking monetary compensation for injury to their own real property.

5. <u>Fifth Claim: Public and Private Nuisance</u>.  Plaintiffs seek to recover damages for a public and private nuisance that adversely affects the "value of Plaintiffs' property." [*Id.,* ¶ 137.] The self-serving nature of this claim is evident in its wording.

6. <u>Sixth Claim: Negligence</u>.  Plaintiffs seek to recover actual and punitive damages for "the damages sustained by the Plaintiffs [sic] and Putative Class Members' properties and businesses." [*Id.,* ¶ 143.] Clearly, this claim is of an economic nature.

7. <u>Seventh Claim: Unjust Enrichment</u>.  Plaintiffs seek to receive "the disgorgement of profits realized by the unjust enrichment." [*Id.,* ¶ 151.]  There should be no illusion that this transfer of profits from Defendants to Plaintiffs advances the national commitment to protect and promote environmental quality, which is the overall purpose of NEPA.

Likewise, in support of Plaintiffs' request for class certification, Plaintiffs do not pursue relief aimed at the promotion of environmental quality, but rather seek relief of an explicitly economic nature: "Plaintiffs and the Putative Class Members should recover compensation for Defendants' unjust enrichment including disgorgement of profits." [*Id., ¶* 174.]

The remedies sought by Plaintiffs demonstrate that Plaintiffs are motivated solely by their own economic self-interest and welfare, as was the plaintiff in *Grazing*. Therein, the United States Court of Appeal for the 8th Circuit ruled that the plaintiff lacked standing to bring a NEPA claim for that very reason. The plaintiff was the Central South Dakota Cooperative Grazing District ("Grazing District"), an association that had a permit to graze cattle upon national grasslands. *Grazing,* 266 F.3d at 893. The Grazing District filed a complaint seeking judicial review of a decision by the Forest Service establishing the total maximum cattle stocking level for the grasslands. *Id.* at 894. The Grazing District argued that the Forest Service violated NEPA because it failed to consider reasonable alternatives to reducing grazing levels in the grasslands. *Id.* at 892.

The Forrest Service moved to dismiss, arguing that "[b]ecause the Grazing District has suffered only economic injury," it had no standing under NEPA. In affirming the District Court's decision granting the motion to dismiss, the Court of Appeals accepted the logic of the Forrest Service "in light of NEPA's overall purpose of establishing 'a broad national commitment to protecting and promoting environmental quality,' *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 348, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989), including 'promot[ing] efforts which will prevent or eliminate damage to the environment and biosphere,' 42 U.S.C. § 4321." *Grazing,* 266 F.3d at 895. "Economic interests alone are 'clearly not within the zone of interests to be protected by [NEPA]'" *Id.* (quoting *Churchill Truck Lines, Inc. v.*

5

*United States*, 533 F.2d 411, 416 (8th Cir. 1976)).  "[I]f its interests are only economic, the Grazing District is not within the zone of interests of the provision under which it has asserted its claim and thereby lacks prudential standing."  *Grazing,* 266 F.3d at 897.

*Grazing* is followed in *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031 (8th Cir. 2002). The case arose from the Rosebud Sioux Tribe's lease of land to Sun Prairie for construction of a pork production facility.  Because the lease covered land included within the Rosebud Indian Reservation, the BIA had to review and approved the lease.  It did so after performing an environmental assessment and issuing a Finding of No Significant Impact ("FONSI"), all in compliance with the requirements of NEPA.  Five months after the lease was executed, the Assistant Secretary for Indian Affairs at the Department of Interior voided the lease saying the FONSI was issued in violation of NEPA.  *Id.* at 1034.

Sun Prairie filed suit, claiming the Assistant Secretary's decision was taken in violation of multiple federal laws, including NEPA and its enabling regulations, 40 C.F.R. §§ 1500-1508. *Id*.  The district court granted Sun Prairie's request for a permanent injunction.  On appeal, intervenors in the action contended that Sun Prairie lacked standing to assert claims under NEPA for the reason that the interests which Sun Prairie sought to protect did not fall within the zone of interests intended to be protected or regulated by NEPA.  The reviewing court agreed.  *Id.* at 1035.

The court began its analysis by noting that Sun Prairie brought its suit under the Administrative Procedure Act ("APA"), 5 US.C. §§ 701-706, the same as the present Plaintiffs.

> The APA is a procedural statute and provides only the "framework for judicial review of agency action."  A suit brought under the APA must be based upon the violation of a separate statute whose violation forms the basis for the complaint.  Thus, in order to establish standing, a plaintiff seeking judicial review must also show the injury complained of falls within the zone of interests sought to be protected by the statutory provision.  In cases where the plaintiff is not itself the subject of the contested regulatory

6

>action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.

*Rosebud Sioux*, 286 F.3d at 1036 (internal citations removed). The court stated that "parties motivated solely by 'their own economic self-interest and welfare, are singularly inappropriate parties to be entrusted with the responsibility of asserting the public's environmental interest.'" *Id.* at 1038 (citing *Churchill*, 533 F.2d at 416).

A similar outcome is seen in *Wyoming Sawmills, Inc. v. U. S. Forest Service*, 179 F.Supp.2d 1279 (D. Wyo. 2001), applying 10th Circuit law on standing. The plaintiff challenged the Forest Service's adoption of a Historic Preservation Plan that limited logging. The plaintiff claimed to have standing under NEPA for the reason that limiting logging would increase the risk of forest fire to its nearby timber, thereby impacting plaintiff's property interest directly, and for the reason that the HPP affected the "human environment" of the plaintiff's employees, thereby causing a lifestyle loss. *Id.* at 1300. The court found that the complaint alleged only an economic injury and therefore plaintiff's interests were outside the NEPA's zone of interests. *Id.* at 1300 "The purpose of the NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions. *Id.* at 1299 (citing *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1235-36 (D.C. Cir. 1996).

The fact that the present Plaintiffs are motivated by protection of their pecuniary interests does not by itself prevent them from asserting standing under NEPA. "Individuals motivated in part by protection of their own pecuniary interest can challenge administrative action under NEPA provided that their environmental concerns are not so insignificant that they ought to be disregarded altogether." *Robinson v. Knebel*, 550 F.2d 422, 425 (8th Cir. 1977). As examples, the court in *Robinson* cites: *National Helium Corp. v. Morton*, 455 F.2d 650, 655 (10th Cir.

7

1971); *Environmental Defense Fund v. TVA*, 468 F.2d 1164, 1171 (6th Cir. 1972) (landowner in area condemned by TVA found to have standing under NEPA); and *Smith v. City of Cookeville*, 381 F.Supp. 100, 102 (M.D. Tenn. 1974) (owners of property condemned for use in recreation area found to have standing.)

However, unlike the plaintiffs in *Robinson* and the cases cited by *Robinson*, the present Plaintiffs are seeking monetary damages. As demonstrated hereinabove by the analysis of Plaintiffs' claims, the quest for monetary damages is the paramount motivating factor. There are no expressions of environmental concerns on the part of Plaintiffs. Any environmental concern that may be gleaned from the Amended Complaint by implication is so ephemeral that it should be disregarded altogether.

NEPA, whether applied alone or in combination with the APA, does not provide for the awarding of damages as a remedy. That is why there is a dearth of NEPA case law making any mention of monetary damages. Moreover, if Plaintiffs were merely seeking to enforce compliance with NEPA, the Moving Defendants would not be proper parties. It is a recognized rule that:

> [T]he federal government is the only proper defendant in an action to compel compliance with NEPA. The rationale for our rule is that, because NEPA requires action only by the government, only the government can be liable under NEPA. A private party cannot "comply" with NEPA, and, therefore a private party cannot be a defendant in a NEPA compliance action.

*Churchill County v. Babbitt*, 150 F.3d 1072, 1082 (9th Cir. 1998) (internal citations removed).[1]

The Moving Defendants, which are private entities, are named as parties to serve as targets in what is substantively a claim for surface damages arising under the Osage Allotment

---

[1] This rule was subsequently modified to permit private parties to intervene as defendants. *See Wilderness Society v. Forest Service*, 630 F.3d 1173, 1180 (9th Cir. 2011).

8

Act, 34 Stat. 539 (1906).  As such, this Court lacks subject matter jurisdiction for the reasons discussed more thoroughly under Proposition II.

**Proposition II. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims.**

Plaintiffs acknowledge the general applicability of the Osage Allotment Act in their Amended Complaint. [Amended Complaint, Dkt. 46, §47]. Section 2 of the Osage Allotment Act governs compensation to be paid to surface owners for damage to their land "as a result of the use of such land for oil or gas mining purposes:

> The bona fide owner or lessee of the surface of the land shall be compensated under rules and regulations prescribed by the Secretary of the Interior in connection with the oil and gas mining operations, for any damage that shall accrue after the passage of this Act as a result of the use of such land for oil or gas mining purposes, or out of damages to the land or crops thereon occasioned thereby, but nothing herein contained shall be construed to deny the surface owner or lessee the right to appeal to the courts, without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him. All claims for damages arising under this section shall be settled by arbitration under rules and regulations to be prescribed by the Secretary of the Interior; but either party shall have the right to appeal to the courts without consent of the Secretary of the Interior in the event he is dissatisfied with the award to or against him. <u>The appeal herein authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage County</u>, to enlarge, modify or set aside the award, and in any such action, upon demand of either party, the issues both of law and of fact shall be tried de novo before a jury upon the request of either party. Arbitration, or a bona fide offer in writing to arbitrate, shall constitute conditions precedent to the right to sue for such damages provided that nothing herein contained shall preclude the institution of any such suit in a federal court having jurisdiction thereof, or the removal to said court of any suit brought in the State court, which under federal law may be removed to the Federal court... (emphasis added). Osage Allotment Act 34 Stat. 539, as amended by Act of March 2, 1929, ch. 493, § 1, 45 Stat. 1478-79

Plaintiffs cite the Osage Allotment Act's implementing regulations, specifically 25 C.F.R. § 226.2(c), as part of the basis for their claims. [Amended Complaint, Dkt. 46 ¶131]. Those same implementing regulations set forth a procedure for the settlement of surface damage claims. See 25 C.F.R. § 226.21 (entitled "Procedure for settlement of damages claimed"). If the parties cannot reach a settlement, the claim must be submitted to arbitration. *Id.* at §226.21(c).

9

Each party has ninety days from the date of the arbitrators' decision to "file an action in a court of competent jurisdiction." *Id.* at § 226.21(f). Furthermore, the Osage Allotment Act is not limited to lease operations, but rather governs compensation "for any damage that shall accrue... as result of the use of such land for oil or gas mining purposes, or out of damages to the land or crops thereon occasioned thereby." Osage Allotment Act of June 28, 1906, 34 Stat. 539, as amended by Act of March 2, 1929, ch. 493, § 2, 45 Stat. 1478-79. Therefore, a determination that leases and permits were void *ab initio* for whatever reason, would not establish subject matter jurisdiction for this Court.

Construing the plain language of the Osage Allotment Act, the Court in *Nadel and Gussman, LLC v. Reed Family Ranch, LLC*, 998 F.Supp.2d 1211 (N.D. Okla. 2014), concluded that this right to appeal constitutes a state law remedy. Citing the excerpt reproduced hereinabove, the Court reiterated that cases will proceed in Osage County unless there exists a specific basis for federal jurisdiction. *Id.* at 1215.

In this case, Plaintiffs seek an award of monetary damages against Defendants under common law theories of trespass, public and private nuisance, and unjust enrichment as described hereinabove. Supplemental jurisdiction over state-law claims is a matter of discretion properly exercised by the district court. *(Rennie v. T&L Oil Inc.*; No. 06-CV-506-CVE, 2008 WL 2906091, at *4 (N.D. Okla. July 24, 2008) (*Rennie II*). A federal district court may decline to exercise supplemental jurisdiction over such claims if: "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction", or "the district court has dismissed all claims over which is has original jurisdiction." 28 U.S.C. § 1367(c)(2) and (3). The Supreme Court has held that supplemental "jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification is consideration of judicial economy, convenience, and

fairness to litigants." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 716, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiffs have alleged that this Court has subject matter jurisdiction under 28 U.S.C. § 1331. [Amended Complaint, Dkt. 46, ¶42.] Presumably, such jurisdiction is limited to the federal questions raised by Plaintiffs' First, Second, and Third Claims for Declaratory Relief. Plaintiffs urge the Court to exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a). Twice in recent memory, Judges of the Northern District have declined to exercise supplemental jurisdiction over state law claims relating to surface damages overlying the Osage mineral estate. In *Nadel and Gussman, LLC v. Reed Family Ranch, LLC*, 998 F.Supp.2d 1211, 1215-16 (N.D. Okla. 2014), Judge Kern determined that the plaintiff's challenge of a 25 C.F.R. § 226.21 arbitration award did not constitute a federal cause of action, and furthermore:

> [A]s a practical matter, these cases typically require fact-based determination regarding the extent of damages and the amounts owed to an Osage County Landowner. Such determinations are well-suited for Osage County judges and/or juries. .

In a recent, but unpublished order, Judge Frizzell similarly declined to exercise supplemental jurisdiction over the plaintiff's claims against an oil and gas operator defendant wherein the plaintiff sought only monetary damages. Such claims, Judge Frizzell explained, "fall squarely within the scope of the Act's (referring to the Osage Allotment Act of June 28, 1906, 34 Stat. 539, as amended by Act of March 2, 1929, ch. 493, § 2, 45 Stat. 1479) reservation of jurisdiction to the Osage County District Court." *Prather v. Osage County Bureau of Indian Affairs, et al.* No. 14-CV-79-GKF-PJC, at p. 10 (N.D. Okla. September 23, 2014).[2]

---

[2] A copy of the unpublished order is attached.

11

These decisions mark a pattern whereby, this Court has consistently recognized the statutory preference of the Osage Allotment Act for these disputes to be decided in the District Court of Osage County, and declines to exercise supplemental jurisdiction over state law surface damages claims after dismissing a Plaintiff's federal cause of action. The Moving Defendants urge the Court to do the same in this case.

**Proposition III. The Action Should Be Dismissed for Want of Subject Matter Jurisdiction for the Reason that There Exists No Underlying APA Final Adjudication to Support an APA "Appeal", Nor any Discrete Justiciable Event or Issue.**

Moving Defendants adopt the arguments and authority cited in support of this proposition in the respective briefs in support of the Motions to Dismiss of co-Defendants Devon Energy Production Co., L.P., B & G Oil Company and Wellco Energy, Inc. on file herein. As a supplemental, the Moving Defendants submit the following.

25 C.F.R. § 226.44 authorizes appeals by persons aggrieved by Osage oil and gas leasing decisions "pursuant to 25 CFR part 2." Part 2, in turn, provides mandatory appellate procedures applicable to "all appeals from decisions made by officials of the Bureau of Indian Affairs by persons who may be adversely affected by such decisions." 25 C.F.R. § 2.3(b). These mandatory appellate procedures are also applicable to an official's inaction. Specifically, 25 C.F.R., pt. 2, § 2.8(a) provides: "A person or person whose interests are adversely affected, or whose ability to protect such interests is impeded by the failure of an official to act on a request to the official, can make the official's inaction the subject of appeal, as follows: (1) Request in writing that the official take the action originally asked of him/her . . . "

In *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920 (10th Cir., 1994), the plaintiffs attempted to bypass a similar administrative appeal process to force the cancelation of oil and gas leases on restricted Indian land in Caddo County, Oklahoma. The court applied the doctrine of exhaustion

12

of administrative remedies to determine that the plaintiffs were not entitled to judicial relief. "Plaintiffs complaint is with the Secretary's failure to act to cancel the lease. The Department of Interior has provided Plaintiffs with an administrative remedy concerning this inaction regarding lease cancellation; as a result, we hold Plaintiffs must exhaust this remedy before seeking judicial review." *Id.* at 925.

Similarly, the present Plaintiffs have failed to exhaust their administrative remedies. In truth, they never set foot on the administrative road, but rather attempted to bypass it entirely by merely referencing the APA, as though that were enough. One of the advantages in doing to so, if successful, is the avoidance of 25 C.F.R., pt. 2, § 2.5, which provides for the posting of an appeal bond if a person believes that he/she may suffer a measurable and substantial financial loss as a direct result of the delay cause by an appeal. Thus, by failing to abide by the mandatory appellate procedures, the present Plaintiffs deprive the Defendants of the protections provided by the regulations. Obviously, any such bond to be posted by the Plaintiffs would be immense.

## ARGUMENTS AND AUTHORITIES OF CO-DEFENDANTS

**Proposition IV. The Action Should Be Dismissed for Failure to Join an Indispensable Party.**

The Osage Nation is a party to every oil and gas lease in Osage County, and therefore is an indispensable party to this litigation, but cannot be joined due to tribal sovereign immunity. Moving Defendants adopt the arguments and authority cited in support of this proposition in the respective briefs in support of the Motions to Dismiss of co-Defendants Devon Energy Production Co., L.P. and Linn Energy Holdings, L.L.C. [Dkt. 136], and B & G Oil Company and Wellco Energy, Inc. [Dkt. 124] on file herein.

**Proposition V. The Action Should be Dismissed for Want of Subject Matter Jurisdiction**

This Court Lacks Subject Matter Jurisdiction over this dispute for the following reasons:

A. Plaintiffs have failed to exhaust their administrative remedies under the Administrative Procedure Act 5 U.S.C. § 551 *et seq*.

B. Plaintiffs' claims are not ripe for consideration by this Court as there has been no Final Adjudication by the Osage Agency, Bureau of Indian Affairs to support an appeal under the Administrative Procedure Act 5 U.S.C. § 551 *et seq*.

Moving Defendants adopt the arguments and authority cited in support of this proposition in the respective briefs in support of the Motions to Dismiss of co-Defendants Devon Energy Production Co., L.P. and Linn Energy Holdings, L.L.C. [Dkt. 136], B & G Oil Company and Wellco Energy, Inc. [Dkt. 124] and The Link Company and Toomey Oil Company, Inc. [Dkt. 137] on file herein.

**Proposition VI. The Action Should be Dismissed for Failure to State a Claim.**

Plaintiffs' claims are untimely and thus are not claims upon which relief may be granted. Moving Defendants adopt the arguments and authority cited in support of this proposition in the Motion to Dismiss and Brief in Support of co-Defendant's Devon Energy Production, L.P. and Linn Energy Holdings, L.L.C. [Dkt. 136] on file herein.

**Proposition VII. Plaintiffs' Claims under the National Environmental Policy Act, 42 U.S.C. § 4221 *et seq.* (NEPA) are Barred by the Doctrine of Mootness.**

Plaintiffs' claims are moot, and, therefore, are no longer cases in controversy appropriate for review by this Court. Moving Defendants adopt the arguments and authority cited in support of this proposition in the respective briefs in support of the Motions to Dismiss of co-Defendants

B & G Oil Company and Wellco Energy, Inc. [Dkt. 124] and The Link Company and Toomey Oil Company, Inc. [Dkt. 137] on file herein.

**Proposition VIII. Private Party Defendants are Not Required to Comply With the Requirements of the National Environmental Policy Act, 42 U.S.C. § 4221 *et seq.* (NEPA).**

NEPA is a purely procedural act which applies only to federal agencies, not private parties. Moving Defendants adopt the arguments and authority cited in support of this proposition in the brief in support of the Motion to Dismiss of co-Defendants B & G Oil Company and Wellco Energy, Inc. [Dkt. 124] and The Link Company and Toomey Oil Company, Inc. [Dkt. 137] on file herein.

### CONCLUSION

"The doors of this courthouse are not open to redress every disappointment in contracting or to heal every economic malady. Rather, we are here to provide remedies for certain violations of legal rights. Our touchstone for assuming the due role of this Court is standing." *Enterprise Management Consultants, Inc. v. United States*, 685 F. Supp. 221, 222 (W.D. Okla. 1988). Plaintiffs attempt to contrive federal jurisdiction over what otherwise would be a surface damages action filed in the district court of Osage County by citing NEPA which was never intended to serve as a vehicle for the recovery of monetary damages. NEPA governs the conduct of federal agencies, not private parties. Congressional intent, and the purpose of NEPA is born out in the multitude of arguments and authorities identified in the Moving Defendants' brief hereinabove, and in the briefs of the co-Defendants in this action. This authority clearly indicates that this case should be dismissed.

**WHEREFORE**, premises considered, the Moving Defendants pray that this Court enter an order dismissing Plaintiffs' Amended Complaint due to Plaintiffs' lack of standing to assert claims under NEPA, and for want of subject matter jurisdiction. Said Defendant's further pray

that this Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). Moving Defendants further pray that this Court enter an order dismissing Plaintiffs' Amended Complaint based on one or more of the arguments and authorities ably identified by the co-Defendants in the action, and for such other relief as may be just and equitable, including an award of the Moving Defendant's reasonable attorney fees and litigation costs.

Respectfully Submitted,

BREWER, WORTEN, ROBINETT
Attorneys for Performance Energy Resources, LLC, Short Oil, LLC, Marco Oil Company, LLC, Osage Energy Resources, LLC, Helmer Oil Corp., and Clear Mountain Production, LLC

By: */s/ Bruce W. Robinett*

By: */s/ Jess M. Kane*

By: */s/ Rick D. Tucker*
Bruce W. Robinett, OBA #7667
Jess M. Kane, OBA #22418
Rick D. Tucker, OBA #15864
P. O. Box 1066
Bartlesville, Oklahoma 74005
(918) 336-4132
bwrobinett@bwrlawoffice.com
jkane@bwrlawoffice.com
rick@bwrlawoffice.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of October, 2014, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all persons who have entered their appearance as ECF registrants in this case.

*/s/ Jess M. Kane*
Jess M. Kane