# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) MARTHA DONELSON and )
(2) JOHN FRIEND, ON BEHALF OF )
ALL SIMILARLY SITUATED PERSONS )
)
      Plaintiffs, )
)
v. )   Case No. 14-CV-316-JHP-FHM
)
(1) UNITED STATES OF AMERICA, )
et al., )
)
      Defendants. )

## OPINION AND ORDER

Before the Court are sixteen Motions to Dismiss Plaintiffs' First Amended Complaint filed by each of the twenty-seven named Defendants in this case. (Doc. Nos. 124, 136, 137, 138, 140, 142, 145, 147, 148, 149, 150, 151, 152, 153, 155, and 156). Also before the Court are the Osage Minerals Council's Motion for Limited Intervention to Move for Dismissal of this Action (Doc. No. 213) and Plaintiffs' Motion to Take Judicial Notice (Doc. No. 196). Because the various motions overlap and cover similar issues, the Court will address each of the pending motions in this Opinion and Order.

## BACKGROUND

Plaintiffs Martha Donelson and John Friend own surface estates in Osage County, Oklahoma. (Doc. No. 46 (First Am. Compl. ("FAC")), ¶¶ 8-9). The named Plaintiffs brought this action on their own behalf and on behalf of all surface owners and surface lessees of land located in Osage County, Oklahoma, who owned such land as of the filing date of the FAC, whose property is subject to an oil and gas mining lease, concession agreement, or drilling

permit and upon which the Defendants and the putative defense class members have either commenced, threatened to commence, or have completed drilling and completion operations. (*Id.* ¶ 10). Plaintiffs brought suit against twenty-nine named Defendants, twenty-seven of which remain in the case:[1]

> (1) The United States of America, through the Department of Interior and its agency, the BIA (the "Federal Defendants");
> (2) Devon Energy Production Company, L.P. ("Devon");
> (3) Chapparal Energy, LLC ("Chapparal");
> (4) Encana Oil & Gas (USA), Inc. ("Encana");
> (5) Performance Energy Resources, LLC ("Performance");
> (6) Ceja Corporation ("Ceja");
> (7) CEP Mid-Continent, LLC ("CEP");
> (8) Linn Energy Holdings, LLC ("Linn");
> (9) Sullivan & Company, LLC ("Sullivan");
> (10) Cardinal River Energy I LP ("Cardinal River");
> (11) Revard Oil & Gas Properties, Inc. ("Revard");
> (12) Black Lava Resources, LLC ("Black Lava");
> (13) B & G Oil Company ("B & G");
> (14) Orion Exploration, LLC ("Orion");
> (15) Nadel and Gussman, LLC ("Nadel and Gussman");
> (16) Lamamco Drilling, Inc. (Lamamco");
> (17) Short Oil, LLC ("Short");
> (18) Wellco Energy, Inc. ("Wellco");
> (19) Marco Oil Company, LLC ("Marco");
> (20) BGI Resources, LLC ("BGI");
> (21) Halcon Resources Corporation ("Halcon");
> (22) The Link Oil Company ("Link Oil");
> (23) Osage Energy Resources, LLC ("Osage Energy");
> (24) Toomey Oil Company, Inc. ("Toomey Oil");
> (25) Kaiser-Francis Anadarko, LLC ("Kaiser-Francis");
> (26) Helmer Oil Corp. ("Helmer Oil"); and
> (27) Spyglass Energy Corp, LLC ("Spyglass").

Plaintiffs also identify a "Putative Defense Class" comprised of those parties "conducting or preparing to conduct oil and gas well related and oil and gas related facility operations within the

---

[1] Plaintiffs voluntarily dismissed Defendant Clear Mountain Production, LLC, on November 16, 2014. (*See* Doc. No. 169). Defendant Ram Energy Resources, Inc. ("Ram") is now identified as Halcon Resources Corporation ("Halcon"). (See Doc. No. 151 (Motion to Dismiss of CEP and Halcon)).

2

boundaries of the Class Area," which is identified as those lands located within the boundaries of Osage County, Oklahoma. (Doc. No. 46, ¶¶ 2, 40).

Plaintiffs seek to challenge final agency action by the BIA under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.* and the National Environmental Protection Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* Under NEPA, which was enacted in 1970, and its implementing regulations, federal agencies are prohibited from making any irreversible or irretrievable commitment of resources before a NEPA analysis is completed, and such agencies are required to prepare an environmental impact statement ("EIS") before authorizing any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4(a)(1), § 1508.18 (defining "major Federal action"). To determine whether an action requires an EIS under NEPA, an agency may prepare an Environmental Assessment ("EA"). 40 C.F.R. § 1501.4(b). Plaintiffs allege an EA for the oil and gas leasing program in Osage County was last prepared in 1979. (Doc. No. 46, ¶ 73). Plaintiffs assert that since the 1979 EA was prepared, there have been significant changes in the relevant environmental laws and regulations, such as air and water quality standards, and drilling processes have changed. (*Id.* ¶¶ 75-76).

According to the FAC, mineral leases in Osage County are obtained at auctions held by the Osage Minerals Council ("OMC") six times per year. (Doc. No. 26, ¶¶ 78-79). OMC and the successful bidder enter into a standard oil and gas mineral lease, which is submitted to the BIA for review. (*Id.* ¶ 79). The Superintendent must approve the lease before it becomes valid. (*Id.*). Plaintiffs allege the lease applicant has a duty to complete an EA as part of the lease application, which the BIA Superintendent must review and determine whether the proposed activity will have a significant impact on the environment. (*Id.* ¶ 80-81). If so, then an EIS is

3

required. (*Id.* ¶ 81). Plaintiffs assert the BIA "has not prepared any EAs prior to approval of oil and gas leases or required that the operators prepare an EA to enable the BIA to satisfy its obligations pursuant to NEPA." (*Id.* ¶ 82). For this reason, the Superintendent's approval of leases without evaluating the environmental impact of the lease prior to approval renders such oil and gas leases "void *ab initio*." (*Id.* ¶¶ 83-84). Plaintiffs do not identify specific leases or approval dates, but do identify "approximately 19,500 active wells" in the Class Area, "of which approximately 14,500 are producing wells and the remaining are service wells, such as for salt water disposal and injection." (*Id.* ¶ 104).

Plaintiffs further allege all lease assignments, concession agreements (in which an operator is granted a large area over which the operator has the sole right to lease and drill), and drilling permits are void *ab initio*, because the BIA failed to comply with NEPA in approving such activities. (*Id.* ¶¶ 85-103). Plaintiffs allege "[f]rom Fiscal Year 2009 to Fiscal year 2012, there were 1401 [drilling permits] that were processed for an average of approximately 350 [drilling permits] per year." (*Id.* ¶ 105). Plaintiffs do not identify the number of lease assignments or concession agreements that were approved since 1979.

Plaintiffs seek a declaratory judgment invalidating the approval by the Bureau of Indian Affairs ("BIA") of leases, assignments, concession agreements, and drilling permits granted to the Defendants and Putative Defense Class Members without satisfying NEPA's requirements. Plaintiffs additionally allege common law claims for trespass, nuisance, negligence, and unjust enrichment against the non-Federal Defendants based on the invalid leases and drilling permits approved by the BIA. Plaintiffs seek declaratory and injunctive relief along with compensatory and punitive damages.

Each of the named defendants has now moved to dismiss the FAC. The Federal Defendants seek dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. No. 148). The twenty-six non-Federal Defendants seek dismissal on various grounds, including failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6): B & G and Wellco (Doc. No. 124); Devon and Linn (Doc. No. 136); Link Oil and Toomey Oil (Doc. No. 137); Helmer Oil, Marco, Osage Energy, Performance, and Short (Doc. No. 138); Chapparal (Doc. No. 140); Ceja (Doc. No. 142); Black Lava (Doc. No. 145); Kaiser-Francis (Doc. No. 147); Nadel and Gussman (Doc. No. 149); Lamamco (Doc. No. 150); CEP and Halcon (Doc. No. 151); Encana (Doc. No. 152); Cardinal River (Doc. No. 153); BGI, Orion, Spyglass, and Sullivan (Doc. No. 155); and Revard (Doc. No. 156). Proposed intervenor OMC has also filed a Motion for Limited Intervention to Move for Dismissal of this Action (Doc. No. 213). Additionally, Plaintiffs ask the Court to take judicial notice of the United States of America's filings in another case, *United States of America v. Osage Wind, LLC, et al.*, 14-cv-704-JHP-TLW (N.D. Okla.) (Doc. No. 196). Six of the non-Federal Defendants oppose Plaintiff's motion.

## DISCUSSION

**I.   Motion of Federal Defendants (Doc. No. 148)**

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). The party asserting jurisdiction has the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Jurisdiction may be challenged through a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

5

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. In reviewing a facial attack, the district court must accept the allegations in the complaint as true." *Id.* (internal citation omitted). The second type of attack goes beyond the allegations in the complaint and challenges "the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Here, the Federal Defendants make a facial attack on the sufficiency of the Plaintiffs' allegations as to the Federal Defendants' sovereign immunity from Plaintiffs' APA claims. Accordingly, the allegations in the FAC are taken as true for purposes of evaluating the Federal Defendants' motion.

It is well settled that Plaintiffs can sue the Federal Defendants only to the extent they waived their sovereign immunity. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). Here, the Federal Defendants argue Plaintiffs' claims against them do not fall within such a waiver of sovereign immunity. Plaintiffs invoke federal jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. § 2201 *et seq.* (Declaratory Judgment Act), 5 U.S.C. § 551 *et seq.* (APA) and 42 U.S.C. § *4321 et seq.* (NEPA). (Doc. No. 46, ¶¶ 41-42). As the Federal Defendants correctly state, and Plaintiffs do not dispute, the United States' sovereign immunity is not waived under the general jurisdiction statutes, 28 U.S.C. § 1331 and 28 U.S.C. § 1346. *See High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006) (noting § 1331 "does not independently waive the Government's sovereign immunity" but "will only confer subject matter jurisdiction where some other statute provides such a waiver."). Moreover, the Declaratory Judgment Act,

6

28 U.S.C. § 2201, does not "itself confer jurisdiction on a federal court where none otherwise exists." *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) (citation omitted).

Therefore, Plaintiffs must demonstrate jurisdiction is proper under the APA and NEPA, based on Plaintiffs' challenge to "final agency action by the BIA." (Doc. No. 46, ¶ 42). The APA serves as a limited waiver of sovereign immunity but does not itself grant subject matter jurisdiction to review agency actions. *City of Albuquerque v. United States Dep't of the Interior*, 379 F.3d 901, 906-07 (10th Cir. 2004). Rather, Plaintiffs must identify an agency action that was "arbitrary, capricious, an abuse of discretion," or otherwise contrary to another federal statute other than the APA itself. 5 U.S.C. § 706; *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001); 5 U.S.C. § 702 ("A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). When, as here, review is sought under the general review provisions of the APA, the "agency action" in question must be "final agency action." 5 U.S.C. § 704; *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 882 (1990). *See* 5 U.S.C. § 551(13) (defining "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.").

Here, Plaintiffs contend a final agency action occurred in the BIA's approval of leases, assignments, concession agreements, and drilling permits without satisfying the requirements of NEPA and its implementing regulations. (Doc. No. 46, ¶¶ 84, 86, 91, 103). The Federal Defendants argue Plaintiffs' allegations are insufficient to confer jurisdiction under the APA, because Plaintiffs do not challenge any particular agency action but rather the entirety of the BIA's oil leasing and extraction program in Osage County since 1979, when the last EA was prepared. (*See id.*, ¶¶ 74-76). The Court agrees with the Federal Defendants.

7

The United States Supreme Court has made clear that "[u]nder the terms of the APA, [a claimant] must direct its attack against some particular 'agency action' that causes it harm." *Lujan*, 497 U.S. at 891. Absent a statute that permits broad regulations to serve as the "agency action" and thus to be the object of judicial review, "a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm her." *Id.*

In *Lujan*, the plaintiffs challenged a so-called "land withdrawal review program" implemented by the Bureau of Land Management ("BLM"), which extended to "currently at least, 1250 or so individual classification terminations and withdrawal revocations." *Id.* at 890 (quotation omitted). The Supreme Court regarded the individual actions of the BLM as "rules of general applicability . . . announcing, with respect to the vast expanses of territory that they cover, the agency's intent to grant requisite permission for certain activities, to decline to interfere with other activities, and to take other particular action if needed." *Id.* at 892. The Court concluded it lacked jurisdiction under the APA to address the flaws in this entire "program," which "cannot be laid before the court for wholesale correction under the APA" absent a particular agency action that more immediately harms the plaintiff. *Id.* at 892-93. Rather, "programmatic improvements" to agency programs are properly sought "in the offices of the Department or the halls of Congress." *Id.* at 891. "Except where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of laws only when, and to the extent that a specific 'final agency action' has an actual or immediately threatened effect." *Id.* at 894. This prohibition also applies

8

to an agency's alleged "failure to act." 5 U.S.C. § 551(13) (defining "agency action" to include an agency's failure to act).

Here, Plaintiffs challenge thousands of unspecified leases, assignments, concession agreements, and drilling permits in Osage County dating back to 1979. Plaintiffs do not identify even one particular agency action for challenge, but rather seek to challenge the entirety of the BIA's oil leasing program in Osage County as far back as 1979. As *Lujan* mandates, the final agency action must be "an identifiable action or event." 497 U.S. at 899. It is apparent Plaintiffs seek "wholesale improvement" of the BIA's leasing practices, which *Lujan* plainly prohibits.

In response, Plaintiffs argue the Federal Defendants mischaracterize Plaintiffs' claims as a challenge to the oil and gas leasing program as a whole, when Plaintiffs in fact "challenge the discrete, individual approvals made by the Superintendent in violation of NEPA." (Doc. No. 166 (Plaintiffs' Response to Federal Defendants' Motion), at 2). However, it is apparent Plaintiffs are attempting to challenge not only individual approvals but also the "Superintendent's wholesale failure to take a 'hard look' at the environmental impacts of drilling in Osage County" (*id.*). The Court fails to discern any difference between Plaintiffs' challenge here and the impermissible challenge made in *Lujan* to hundreds of individual BLM actions, which those plaintiffs used to challenge the entire BLM land management program. As in *Lujan*, Plaintiffs' "programmatic challenge" does not fall within the scope of the APA and is therefore not subject to judicial review. *See Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (holding plaintiffs seeking relief under the APA have the "burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of section 551(13)."); *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 490-91 (5th Cir. 2014) (rejecting APA challenge to past and ongoing approval of oil and gas leasing and

9

timber exploitation programs as "programmatic challenge," where Tribe's complaint was "structured as a blanket challenge to *all* of the Government's actions with respect to *all* permits and leases granted for natural resource extraction on a significantly large amount of land" rather than a challenge "to a particular and identifiable action taken by the Government."); *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 876 (11th Cir. 2009) ("Broad programmatic attacks against agencies are not permissible under the APA.").

Even if Plaintiffs were to provide examples of specific leases in the pleading that might themselves constitute final agency action, Plaintiffs could not challenge an entire leasing program by identifying specific allegedly-improper final agency actions within that program and using those examples as evidence to support a sweeping argument that the BIA's entire leasing program dating back to 1979 violates NEPA. *See Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000). Nor can the United States stipulate to subject-matter jurisdiction, as Plaintiffs argue will likely occur. *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988). Indeed, the Federal Defendants indicate in their reply brief they "will not stipulate to a programmatic administrative record." (Doc. No. 174 (Federal Defendants' Reply), at 4).

As stated by the Fifth Circuit in *Sierra Club*, the prohibition on programmatic challenges "is motivated by institutional limits on courts which constrain our review to narrow and concrete actual controversies. We thereby not only avoid encroaching on the other branches of government, but we continue to respect the expert judgment of agencies specifically created to deal with complex and technical issues." *Sierra Club*, 228 F.3d at 566. Accordingly, the

sovereign immunity of the United States is not waived, and this action must be dismissed as to the Federal Defendants for lack of subject matter jurisdiction.[2]

**II.    Motions of Non-Federal Defendants (Doc. Nos. 124, 136, 137, 138, 140, 142, 145, 147, 149, 150, 151, 152, 153, 155, and 156) and Proposed Intervenor OMC (Doc. No. 213)**

The non-Federal Defendants seek dismissal of the FAC on various grounds, including lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(6)(6), and failure to join the Osage Nation as an indispensable party under Fed. R. Civ. P. 12(b)(7). Many of the non-Federal Defendants adopt the arguments made in the Motions to Dismiss filed by their co-defendants.

The Court concludes it need not address the majority of the non-Federal Defendants' arguments, however, because the claims against these defendants may be resolved on a single issue. As Plaintiffs admit, the non-Federal Defendants are not subject to NEPA requirements, and the state law claims against the non-Federal Defendants "necessarily depend upon whether the Superintendent of the Osage Agency violated NEPA in approving the concession agreements, leases and [drilling permits]." (Doc. No. 162 (Plaintiffs' Response to B & G and Wellco Motion to Dismiss), at 2-4). Accordingly, if Plaintiffs' NEPA and APA claims against the Federal Defendants fail, Plaintiffs' claims against the non-Federal Defendants also fail.[3]

As discussed above in Part I, the Federal Defendants have sovereign immunity from Plaintiffs' alleged "programmatic" violations of NEPA. There is no independent basis for the

---

[2] Because the Court dismisses the entire action as to the Federal Defendants based on sovereign immunity, the Court need not address the Federal Defendants' second argument for dismissal, that all claims that accrued prior to August 11, 2008, are barred by the applicable statute of limitations.

[3] This argument is articulated most clearly in the Motion to Dismiss filed by Devon and Linn (Doc. No. 136, at 18-19). Devon and Linns's argument is adopted and incorporated by Chapparal (Doc. No. 140); Ceja (Doc. No. 142); Black Lava (Doc. No. 145); Kaiser-Francis (Doc. No. 147); Nadel and Gussman (Doc. No. 149); Lamamco (Doc. No. 150); CEP and Halcon (Doc. No. 151); Encana (Doc. No. 152); Cardinal River (Doc. No. 153); Sullivan, Orion, Spyglass, and BGI (Doc. No. 155); and Revard (Doc. No. 156). This argument is also raised separately by B & G and Wellco (Doc. No. 124, at 7-8); Link Oil and Toomey Oil (Doc. No. 137, at 7-9); and Performance, Short, Marco, Osage Energy, and Helmer Oil (Doc. No. 138, at 12, 14-15).

11

Court to exercise jurisdiction over the non-Federal Defendants in this case. For this reason, Plaintiffs have not stated a claim against the non-Federal Defendants. Therefore, Plaintiffs' claims against the non-Federal Defendants must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or alternatively under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. To the extent Plaintiffs ask the Court to retain supplemental jurisdiction over the state law claims, the Court declines to do so, having dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

In addition, proposed intervenor OMC moves for limited intervention in this case for the sole purpose of filing a motion to dismiss this action for failure to join an indispensable party under Fed. R. Civ. P. 19. (Doc. No. 213). Plaintiffs object to OMC's motion to intervene. (Doc. No. 222). Having dismissed all defendants from this case, the Court finds OMC's motion to be moot. Accordingly, OMC's motion is denied.

### III.     Plaintiffs' Motion to Take Judicial Notice (Doc. No. 196)

Finally, Plaintiffs ask the Court to take judicial notice of the United States' filings in *United States of America v. Osage Wind, LLC, Enel Kansas, LLC and Enel Green Power North America, Inc.*, 14-cv-704-JHP-TLW, which was filed in this Court in 2014. (Doc. No. 196). In particular, Plaintiffs point to the filings by the United States in that case, in which the United States acknowledges its fiduciary responsibility to protect the Osage Mineral Estate. Plaintiffs argue the United States' position in the Osage Wind case supports Plaintiffs' argument that the Osage Nation is not a necessary or indispensable party under Fed. R. Civ. P. 19. Six of the non-Federal Defendants object to Plaintiffs' Motion: B & G and Wellco (Doc. No. 197); Devon and Linn (Doc. No 199); and Link Oil and Toomey Oil (Doc. No. 200).

The Court finds Plaintiffs' Motion to be moot. The Court is granting the non-Federal Defendants' motions to dismiss based on failure to state an actionable claim (*see* Part II, above). For this reason, the Court will not address the argument that the Osage Nation is an indispensable party under Fed. R. Civ. P. 19. Because this issue will not be addressed, it is not necessary to determine whether the Court may take judicial notice of the aforementioned declarations by the United States in *Osage Wind*. Accordingly, Plaintiffs' Motion to Take Judicial Notice is denied as moot.

## CONCLUSION

For the reasons set forth above, the Motions to Dismiss (Doc. Nos. 124, 136, 137, 138, 140, 142, 145, 147, 148, 149, 150, 151, 152, 153, 155, and 156) are **GRANTED**. OMC's Motion for Limited Intervention (Doc. No. 213) is **DENIED AS MOOT**. Plaintiffs' Motion to Take Judicial Notice (Doc. No. 196) is **DENIED AS MOOT**.

James H. Payne
United States District Judge
Northern District of Oklahoma

13